■ JOSEPH A. SCHUR, as a Shareholder of Odell, Inc., on Behalf of Himself and All Other Shareholders of Odell, Inc., Similarly Situated, Respondent, v HAL A. SALZMAN, Appellant, et al., Defendants.—Judgment, Supreme Court, New York County, entered October 7, 1974 after nonjury trial, unanimously modified, on the law and on the facts, to restrict recovery thereunder to plaintiff as the representative of the former stockholders of Odell, Inc., as a class, and to remand to ascertain the members of the class and others affected, and otherwise affirmed, without costs and without disbursements. This is a stockholders' derivative action to recover damages occasioned to Odell, Inc., by defendant-appellant Salzman, its former officer, by alleged breach of his duty as a fiduciary in that he sold his shares, as well as management control, to Papercraft, a corporation which thereafter became owner of Odell. Salzman had been chairman of the board and chief executive officer of Odell, and a 5% stockholder. In 1969, when the market price for Odell stock was about $22.50 per share, Odell was offered, and rejected, Papercraft's offer of merger at $16.50. Salzman arranged with Papercraft to sell his stock at $30 and also to sponsor an amendment to Odell's by-laws to reduce the number of its directors, to place several of Papercraft's nominees on the board, and to give up the remaining three years of his employment contract with Odell in exchange for a one-year contract at the same salary of $100,000 per annum. Parenthetically, two days earlier, Papercraft had arranged with one Lawrence, a 28% Odell stockholder and director, to vote for himself and four Papercraft nominees to constitute a majority on the decreased board, and to buy his stock at a price above the market with an option, within six months, to unload an additional large block of the stock at a price above the market. Papercraft and Salzman consummated their deal, but, at Odell's next board meeting, he was frustrated from implementing the rest of the scheme. Papercraft reacted to this setback by purchasing 8,500 shares of Odell from stockholder Wessenger at $30. (The derivative corporate claim against him has been settled.) Eventually Papercraft was enabled to solidify control of Odell by acquisition of sufficient shares at prices above the market. There has been other litigation concerning the absorption of Odell by Papercraft. One such case is *Albert v Salzman,* (41 AD2d 501). Another, taken into account by the trial court, was tried in the United States District Court under subdivision (b) of section 16 of the Securities Exchange Act of 1934 (US Code, tit 15, § 78c, subd [b]), based upon Salzman's "short swing" profit in his profitable sale of stock based on inside information. Recovery was limited to some $56,000, and that limitation is not *res judicata* in this case as to the quantum of damage, the Federal suit having been limited in scope. It was appropriate, however, for that recovery to have been credited against the damage ascertained here, both judgments deriving essentially from the same facts. In this case, the evidence justified the result achieved by the trial court. Defendant was a faithless fiduciary who worked against the interests of his employer, and the tainted profits of the transaction belong to his employer. But should those profits belong to the new owner, Papercraft, which had worked through defendant's improper acts, to achieve that control and make possible those profits? Outright affirmance of trial term's judgment would eventually result in Papercraft reaping a reward for its own and its agent's misdeeds, and, under even a minimal standard of equity, this is unthinkable. The profits truly belong to those stockholders of Odell who were innocent of complicity in the transaction reviewed, and not to

those who engineered it. It is necessary to ascertain that particular class of shareholders. We therefore modify the judgment ad interim accordingly, and remand for the purpose indicated. Concur—Markewich, J. P., Lupiano, Tilzer, Capozzoli and Lane, JJ.