■ PETER R. TIERNO, Individually and as a Director and Shareholder of TOWN SQUARE CHEVROLET GEO, INC., Appellant, v DONALD PUGLISI, Individually and as an Officer and Director of TOWN SQUARE CHEVROLET GEO, INC., et al., Respondents. (Action No. 1.) DONALD PUGLISI, Appellant, v PETER R. TIERNO, Respondent. (Action No. 2.) [719 NYS2d 350] —Mugglin, J. Appeals (1) from an order of the Supreme Court (Monserrate, J.), entered July 2, 1999 in Broome County, upon a decision of the court in favor of defendant Donald Puglisi in action No. 1, and (2) from a judgment of said court, entered July 28, 1999 in Broome County, upon a decision of the court in favor of defendant in action No. 2.

In 1992, Peter R. Tierno and Donald Puglisi purchased Ken Wilson Chevrolet. The parties agreed that Tierno would contribute $200,000 for a one-third ownership share and Puglisi would contribute $400,000 for a two-thirds ownership share. The balance of the purchase price was financed through a

guaranteed loan from Binghamton Savings Bank (hereinafter BSB), which also acted as the primary lending institution for the dealership. The parties formed a corporation, Town Square Chevrolet Geo, Inc. (hereinafter TSC), to operate the car dealership, and shares of stock were issued to the parties in the agreed percentages. General Motors authorized transfer of the franchise from Ken Wilson to the parties with Tierno, based upon his experience in the automobile industry and with General Motors, as dealer/operator and dealer/owner. Initially, the parties agreed that they would each receive a salary of $1,000 per week and a monthly bonus of $4,000. Almost from the outset, the business enterprise experienced financial difficulties arising from a number of sources and ultimately it was resold to Ken Wilson in 1996.

Tierno, the minority stockholder, commenced action No. 1, a derivative action on behalf of TSC seeking to hold Puglisi liable for acts of fraud, misfeasance and nonfeasance, all of which were alleged to be detrimental to the economic interests of the corporation. In action No. 2, a separate action joined with the Tierno action, Puglisi sued Tierno seeking contribution, claiming that he paid more than his proportionate share (50%) that he was obligated to pay BSB as guarantor of the TSC loans. Tierno counterclaimed alleging that Puglisi breached his fiduciary duty as a majority stockholder and should be required to indemnify Tierno for any and all obligations to BSB associated with TSC.

Following a nonjury trial, Supreme Court, in action No. 1, held that the doctrine of unclean hands precluded Tierno from receiving any recovery either individually or on behalf of the corporation based on activities which occurred during the period TSC was operational. However, following the resale to Wilson, Tierno could be considered an innocent shareholder and entitled to an accounting to determine his proper share of corporate profits or assets. Supreme Court determined that Tierno had "unclean hands" for these reasons: (1) based on his complicity in the fraud perpetrated against TSC involving the initial valuation of the used car inventory; (2) his help in implementing a scheme to divert TSC moneys (insurance rebates) to the individual stockholders; and (3) his participation with Puglisi in a scheme to overcharge TSC for rent associated with a body shop and to split the overcharge.

With respect to action No. 2, Supreme Court determined that Puglisi had breached his fiduciary duty to the corporation and the minority shareholder by making improper unsecured loans to TSC, and by greatly accelerating the repayment of

those loans leaving TSC with insufficient resources to pay BSB, causing its loan to fall into arrears. As a result, Supreme Court dismissed Puglisi's claim for contribution and directed Puglisi to pay Tierno the balance due on a note that Tierno had given to BSB and to indemnify Tierno for any payments that he had already made on that note. The parties appeal from Supreme Court's order in action No. 1 and judgment in action No. 2.

The thrust of Tierno's derivative action is to recover excess compensation allegedly paid to Puglisi from 1992 to 1995. Despite their initial agreement that each would take $1,000 per week as salary, Puglisi thereafter unilaterally increased his weekly salary to $1,500 and then to $2,500. By agreement, Tierno was charged with the responsibility of operating the "front end" of the dealership, i.e., the sale of new and used vehicles, while Puglisi was responsible for the "back-end" of the dealership, i.e., the service, parts and body shop departments. The record establishes that Puglisi spent less than 10 hours per week at the dealership while Tierno routinely spent in excess of 60 hours per week. Essentially, Tierno contends that the salary paid to Puglisi was unearned and excessive and should be repaid to the corporation.

In dismissing action No. 1 with respect to the operational period of TSC, Supreme Court, in addition to finding that Tierno had "unclean hands," held that Tierno acquiesced in and ratified the compensation paid to Puglisi by the corporation. Shareholders who would benefit from a successful derivative action must have done nothing themselves to forfeit the right to seek equitable relief from the courts against the malfeasance of corporate officers, directors or shareholders (see, Schur v Salzman, 50 AD2d 784, appeal dismissed 38 NY2d 1007).

Majority stockholders who have the power and authority to direct and control the affairs of a corporation have a fiduciary duty to all shareholders to adhere to a code of conduct which requires that all shareholders be treated fairly and that the corporate affairs be managed fairly and with prudence (see, Alpert v 28 Williams St. Corp., 63 NY2d 557, 568-569). Thus, where a majority stockholder breaches his or her fiduciary duty, the minority aggrieved shareholder may be entitled to equitable relief as a result (see, id., at 569). In order to establish the defense of unclean hands to a stockholder's derivative action, the evidence must demonstrate that the plaintiff's conduct was immoral or unconscionable (see, Connecticut Natl. Bank v Peach Lake Plaza, 204 AD2d 909, 911), that the conduct of the plaintiff was directly related to the subject matter in litigation and that the party asserting the doctrine of unclean

hands was thereby injured (*see, Clifton Country Rd. Assocs. v Vinciguerra*, 195 AD2d 895, 896, *lv denied* 82 NY2d 664).

Here, we agree with Tierno that Supreme Court improvidently determined that the defense of unclean hands precluded a judgment in his favor in action No. 1. While the record discloses that Tierno was guilty of unclean hands to a limited extent, stemming from his involvement in the diversion of funds from the corporation, Supreme Court's finding that Tierno acted in concert with the seller to inflate the purchase price of the dealership is not adequately supported by the record and, in any event, was quickly rectified. Moreover, Puglisi has demonstrated no injury from Tierno's limited misconduct, making the unclean hands doctrine unavailable to him to bar equitable relief to Tierno (*see, Nishman v De Marco*, 62 NY2d 926; *Mehlman v Avrech*, 146 AD2d 753; *Higgins v Normile*, 130 AD2d 828). Puglisi, on the other hand, as determined by Supreme Court, without corporate authorization routinely engaged in self-dealing designed simply to benefit himself by diverting corporate funds for his own purposes.

Further, we reject Supreme Court's determination that Tierno, through his silence, ratified and acquiesced in the payment of excessive salaries to Puglisi. Here, there were no corporate meetings or discussions with respect to the increase of Puglisi's salary (*see, Winter v Bernstein*, 177 AD2d 452). It is apparent that Tierno became aware of these unilateral salary increases after the fact and did not have an opportunity to object. Accordingly, since we find no basis for dismissal of Tierno's complaint brought on behalf of the corporation as minority stockholder, Supreme Court's dismissal of action No. 1 must be reversed.

Next, we address Puglisi's claim that, in action No. 2, Supreme Court erred in denying his right to contribution from Tierno with respect to the obligations of the parties to BSB. First, we reject Puglisi's contention that he did not violate any fiduciary duty to Tierno as a minority stockholder of TSC. The record clearly establishes that Puglisi operated TSC for his own self-interests and took undue advantage of his majority position in order to put his interests ahead of all other considerations. Clearly, Puglisi's arrangement to loot the corporation by repaying the personal loans which he made to the corporation on an accelerated schedule to the exclusion of bona fide corporate obligations constitutes a breach of fiduciary duty (*see, Szelega v O'Hara*, 159 AD2d 890, 891-892). Under these circumstances, a majority stockholder who is engaged in such "looting," rendering the corporation unable to pay its

obligations and exposing all stockholders to liability with respect thereto, may be held personally responsible (*see, Matter of Davis,* 174 AD2d 449, 451-452). Accordingly, Supreme Court correctly determined that Puglisi should be solely responsible for the obligations to BSB and should indemnify Tierno for any amount that he has previously paid with respect thereto.

Cardona, P. J., Peters, Spain and Lahtinen, JJ., concur. Ordered that the order entered in action No. 1 is reversed, on the law and the facts, with costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision. Ordered that the judgment entered in action No. 2 is affirmed, with costs.