Willis H. SUTER and C. Carter Suter; Individually and Derivatively as Shareholders of Frantz, Inc., Appellants,

v.

Henry C. MAZYCK; Thomas C. Roser and Fred F. Roser, III, Appellees.

No. 2006–CA–000506–MR.

Court of Appeals of Kentucky.

April 13, 2007.

As Modified July 13, 2007.

Warren J. Hoffman, J. Bradford Derifield, Frost Brown Todd LLC, Lexington, KY, for appellants.

Thomas W. Miller, Elizabeth C. Woodford, Miller, Griffin & Marks, PSC, Lexington, KY, for appellees.

Before THOMPSON and WINE, JUDGES; KNOPF,[1] Senior Judge.

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Jus-

## OPINION

THOMPSON, Judge.

The appellants, Willis H. Suter and C. Carter Suter, individually and derivatively on behalf of Frantz, Inc., filed this action against the appellees, Henry C. Mazyck, Thomas C. Roser, and Fred F. Roser, III, alleging that the appellees breached their fiduciary duty as majority shareholders and officers and directors of Frantz, Inc. The circuit court granted summary judgment to the appellees. Because we find that the summary judgment was granted before the Suters had a reasonable opportunity to complete discovery, we vacate the summary judgment and remand the case to the circuit court.

Frantz, Inc. is a closely-held family corporation that has been operating a plumbing and air conditioning contracting business since 1950. By 1977, the sole shareholder in Frantz was W.C. Suter, Jr. Over a period of time after 1977, Mr. Suter gifted 900 shares of Frantz to each of his three natural sons: Willis Suter, Carter Suter, and Robert Suter, now deceased. He also gave 900 shares to each of his three adopted children: Thomas C. Roser, Fred F. Roser, III, and Ann Mazyck, jointly with her husband, Henry Mazyck. Thus, the total amount of shares gifted was 5,400.

After Mr. Suter died in 1990, his shares were reacquired by Frantz leaving only the 5,400 gifted shares held by his children as issued and outstanding. In January 2003, Robert Suter died and his shares were reacquired by the corporation. As a result, the combined shares of Willis and Curtis constituted a minority position in Frantz with the appellees having a combined majority position.

At the time of Robert's death, all of the children sat on Frantz's Board of Directors and were officers of the corporation. However, in May 2005, at a special shareholders' meeting, by a 3–2 shareholder vote, the Suters were removed from Frantz's Board of Directors.

## PROCEDURAL HISTORY

One month after their removal from the Board, on June 14, 2005, the Suters, individually and derivatively on behalf of Frantz, filed the present action alleging that the appellees had breached their fiduciary duty as majority shareholders, officers and directors of the corporation. Specifically, the complaint alleges that: (1) the appellees' children were paid by Frantz for work not actually performed; (2) the appellees submitted false reimbursement requests that charged Frantz for personal expenses; (3) personal trips and vacations were charged to Frantz by the appellees; (4) the appellees abused and failed to repay their personal expense accounts; (5) the appellees provided family members with unauthorized personal benefits paid for by Frantz; (6) Frantz's corporate employees were used for personal jobs; (7) corporate records were removed or destroyed by appellees; (8) the appellees paid unauthorized and unwarranted bonuses; and (9) the appellees used threatening, abusive and oppressive actions intended to "squeeze" the Suters from the corporation.

The record reveals that during the eight months between the filing of the complaint and the summary judgment, the case was active and the subject of furious litigation between the parties. On June 27, 2005, the Suters filed a motion for a temporary injunction seeking to have the court declare that their removal from the Board was void since it was not accomplished in

tice pursuant to Section 110(5)(b) of the Ken- tucky Constitution and KRS 21.580.

accordance with KRS 271B.8–080(3) and sought their reappointment as directors. The court denied the temporary injunction on July 19, 2005.

While the motion for the temporary injunction was pending and prior to filing their answer, the appellees deposed the Suters. An answer was filed on July 8, 2005, and the appellees also filed a request for production of documents requesting that the Suters produce various documents including time sheets, job tickets, invoices, receipts and other documents to support the allegations made in the complaint.

On November 8, 2005, the Suters filed a motion to compel discovery. In that motion they stated that a set of interrogatories and request for production of documents had been hand-delivered to defense counsel on July 20, 2005, and after agreeing to several extensions, on September 27, 2005, they were informed that the requested documents were available at defense counsel's office. Upon arriving at the office, the Suters' counsel found thousands of documents stacked in boxes, the vast majority of which were not responsive to the document request and not relevant to the case. Although the order is missing from the record, the court's docket shows that the motion to compel was denied on November 29, 2005.

On January 3, 2006, the Suters filed a motion to amend the complaint to include a breach of contract action against Frantz as a result of the corporation's failure to purchase appellants' stock in accordance with the corporation's amended stock purchase agreement and seeking dissolution of the corporation pursuant to KRS 271B.14–300 et. seq.[2] While that motion was pending and before the Suters deposed the appel-

lees or made further discovery requests, on January 14, 2006, the appellees moved for summary judgment.

## THE APPELLEES' MOTION FOR SUMMARY JUDGMENT

The basis for the appellees' summary judgment motion was as follows: (1) there was no evidence to support the allegations in the complaint; (2) the Suters had unclean hands and acquiesced to the alleged acts of the appellees which precluded relief; and (3) the alleged misuse of corporate assets was moot because, after the filing of the complaint, the Board enacted policies to prevent further misuse.

In support of their motion, the appellees relied heavily on Willis's and Curtis's depositions. To refute the allegation that the appellees used corporate assets for their personal benefit, the appellees pointed out that Willis and Curtis testified that they had also used Frantz's "118 accounts" to pay personal expenses.[3] Through Willis's and Curtis's depositions, the appellees established that the accounts had been in existence at least since the death of Mr. Suter and both Willis and Curtis testified that they had used the accounts. Additionally, both admitted that they had taken trips paid for by Frantz and that Frantz employees had been used without compensation to work on their homes. The appellees also produced evidence that although the Suters complain about the bonuses paid in 2004, the Suters received the same bonuses.

## THE SUTERS' RESPONSE TO THE MOTION FOR SUMMARY JUDGMENT

The Suters filed a timely response to the motion for summary judgment. They ar-

---

2. The motion to amend the complaint was denied. The Suters filed a separate action in the Fayette Circuit Court which remains pending.

3. 118 accounts are accounts used by Frantz to pay expenses for shareholders and employees which are then reimbursed to Frantz.

gued that summary judgment would be premature and, at the very least, they should be given the opportunity to depose the appellees. The appellees had not been deposed, they contended, through no fault of their own but because of the appellees' failure to comply with discovery request. They also denied that their past use of the 118 accounts and occasional use of corporate employees for their personal use were sufficient to make their hands so "unclean" as to preclude recovery. They further denied that they acquiesced to appellants' abuses of corporate assets.

In support of their response, the Suters detailed the specific financial documents requested from appellees but that remained unreceived. Additionally, Willis and Curtis submitted affidavits stating that their use of the 118 accounts was limited and that neither had used the accounts for several years. In addition, they submitted invoices and service work orders which, they maintained, demonstrated that Tommy Roser, Thomas Roser's son, was paid for work that he did not actually perform. Additionally, the Suters included a "sampling" of personal items charged to Frantz by the appellees. Finally, they submitted letters written in 2003 by Willis, then Executive Vice President to Hank Mazyck, then President, expressing his concern about the personal expenditures by Frantz's shareholders, as well as Tommy Roser's employment.

A hearing was held on the motion for summary judgment at which both parties orally presented their arguments. At its conclusion, the court indicated that the summary judgment would be granted because the case could be resolved in the separate action filed against the corporation seeking its dissolution. On February 8, 2006, the circuit court granted appellees' motion for summary judgment.

We now turn to the contentions on appeal.

## STANDARD OF REVIEW

The proper standard of review in appeals from summary judgments has frequently been recited and is concisely set forth in *Lewis v. B & R Corporation,* 56 S.W.3d 432, 436 (Ky.App.2001) as follows:

> The standard of review on appeal when a trial court grants a motion for summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." The trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. The moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." (citations omitted).

A summary judgment is a final order and, therefore, should not be entered "as a form of penalty for failure of the plaintiff to prove his case quickly enough." *Conley v. Hall,* 395 S.W.2d 575, 580 (Ky.1965). It is proper only after the party opposing the motion has been given ample opportunity to complete discovery and then fails to offer controverting evidence. *Pendleton Bros. Vending, Inc. v. Com. Finance & Administration Cabinet,* 758 S.W.2d 24, 29 (Ky.1988) (citing *Hartford Insurance Group v. Citizens Fidelity Bank & Trust Co.,* 579 S.W.2d 628 (Ky. App.1979)).

In *Roberson v. Lampton*, 516 S.W.2d 838 (Ky.1974), the court cautioned against the use of summary judgment as a means of luring a party into a "premature showdown" by forcing the opposing party to try his case on the merits. Citing *Conley*, *supra*, the court stated:

We think that it should be borne in mind that the motion for summary judgment is not a trick device for the premature termination of litigation. Its function is to secure a final judgment as a matter of law when there is no genuine issue of a material fact ... The burden is on the movant to establish the nonexistence of a material fact issue. He either establishes this beyond question or he does not. If any doubt exists, the motion should be denied. *Id.* at 840.

The holding in *Roberson* has been given a narrow construction in that the movant does not have to show that the party opposing a motion for summary judgment actually completed discovery but only that the opposing party had the opportunity to do so. *Hartford Ins. Group, supra*. Absent a sufficient opportunity to develop the facts, however, summary judgment cannot be used as a tool to terminate the litigation.

## ARE THE ALLEGATIONS IN THE COMPLAINT MOOT?

■ If, as appellees contend, the issues raised in the complaint are moot by reason of the adoption of corporate policies addressing the Suters' allegations, then, as a matter of law, summary judgment was proper. Further discovery would, therefore, be meaningless.

We are not persuaded, however, that the allegations are moot. Following the filing of the complaint, the Frantz Board of Directors instituted new policies regarding the 118 accounts, payment of personal expenses and all of the other allegations of misuse of corporate funds made by the Suters. The new policies, however, can prevent only future abuses and make no provision for compensating either the corporation or its shareholders for past abuses.

## WAS SUMMARY JUDGMENT PREMATURE?

The remaining issues raised in the summary judgment motion are factual issues. Thus, for summary judgment to be properly granted, the party opposing the motion must have been given adequate opportunity to discover the relevant facts. Only if that opportunity was given do we reach the issue of whether there were any material issues of fact precluding summary judgment.

Whether a summary judgment was prematurely granted must be determined within the context of the individual case. In the absence of a pretrial discovery order, there are no time limitations within which a party is required to commence or complete discovery. As a practical matter, complex factual cases necessarily require more discovery than those where the facts are straightforward and readily accessible to all parties.[4] In this case, the facts involve the parties' dealings with the assets of a multi-million dollar corporation over a period of more than ten years and are factually complex.

Both at the circuit court level and now before this court, the appellees have argued vehemently for the application of the unclean hands doctrine as a complete defense to their alleged misconduct. While

---

4. For instance, foreclosure actions are generally ones where the facts are known to all parties.

the Suters' depositions established that they had in the past used corporate assets for their personal use, we find that they are not precluded from pursuing the relief requested.

 The unclean hands doctrine is a rule of equity that forecloses relief to a party who has engaged in fraudulent, illegal, or unconscionable conduct but does not operate so as to "repel all sinners from courts of equity." *Dunscombe v. Amfot Oil Co.*, 201 Ky. 290, 256 S.W. 427, 429 (1923). "The transaction with respect to which there was misconduct must be connected with the matter in litigation in order for the doctrine of unclean hands to apply." *Eline Realty Co. v. Foeman*, 252 S.W.2d 15, 19 (Ky.1952). And although the operation of the maxim is broad, it is not without limitation and will not apply to all misconduct or to "every act smacking of inequity or deceit" in relation to the matter in which the relief is sought. *Parris' Adm'r v. John W. Manning & Sons*, 284 Ky. 225, 144 S.W.2d 490, 492 (Ky.1940). Applied specifically to a stockholder's derivative action, the plaintiffs must have not engaged in conduct which would forfeit their right to seek equitable relief for the malfeasance of the corporate directors, officers, or majority shareholders. *See Tierno v. Puglisi*, 279 A.D.2d 836, 838, 719 N.Y.S.2d 350 (2001).

 While we agree that the Suters had, in the past, used the 118 accounts, taken "incentive" trips charged to Frantz, taken bonuses from the corporation and, at least on one occasion, used corporate employees for their personal use, their contention is that since becoming majority shareholders, the appellees have looted the corporation for their own benefit. They claim that the appellees have utilized the 118 accounts and corporate credit accounts to such an extent as to constitute an abuse of the corporation for their personal bene-

fit, and have paid Tommy Roser for work that was not performed. The limited record does not reveal the extent of the appellees' use of corporate funds or whether the payments made to Tommy Roser were for his legitimate service to Frantz.

The appellees contend and the circuit court apparently agreed, that no matter how de minimus the conduct of the Suters, their use of the corporate assets precludes the relief sought. Under the appellees' application of the unclean hands doctrine, no matter how horrendous the conduct of the defendant, the plaintiff's hands must be spotless. We disagree.

 The unclean hands doctrine is a rule of equity and, therefore, should not be applied if to do so reaches an inequitable result. When the plaintiff has engaged in conduct less offensive than that of the defendant, the rule will not preclude the plaintiff's recovery. As stated in *Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co.* 95 F.2d 978, 983 (6th Cir. 1938):

> [I]t is to be noted that the rule is not inexorable that a plaintiff, who comes into court with unclean hands, is always to be denied relief, regardless of other circumstances in the case, for the maxim should not be applied where an inequitable result would be reached. If a defendant has been guilty of conduct more unconscionable and unworthy than that of the plaintiff, the rule may be relaxed. (citations and internal quotation marks omitted).

The reasoning in *Goodyear* has sound application to a derivative action where the action is brought on behalf of a corporation. If, as appellees suggest, the Suters' participation in the personal use of corporate assets, no matter how minor or infrequent, precludes them from seeking to halt the majority shareholders' looting of the

corporation, then the corporation and their position as minority shareholders would be left vulnerable to financial collapse without redress. Equity cannot condone such a result.

There are material issues of fact as to the extent of the Suters' misconduct and that of the appellees'; under the *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476 (Ky.1991) standard, therefore, summary judgment was not proper. Having determined that there is insufficient evidence in the record to support the judgment, however, the question remains as to whether the Suters were given the opportunity to conduct further discovery or if they simply failed to conduct the necessary discovery.

■ If the Suters are to prevail, the corporate records containing time sheets, reimbursement requests, credit card bills, and other financial records which would either prove or disprove their allegations are crucial. As appellants point out, deposing the appellees before this information was obtained would severely limit any questions in regard to the alleged misuse of corporate personnel and assets.

Promptly after the complaint was filed, the Suters served interrogatories and a request for production of documents; however, it was not until September 2005 that the records were made "available" to the Suters. After their motion to compel was denied on November 29, 2005, and faced with thousands of documents, some of which were not relevant or requested, the Suters were left to sift through the mountain of paper to gain their information. Yet, just six weeks later, the appellees moved for summary judgment. Under the circumstances, we hold that the Suters did not have a reasonable time to complete discovery.

For the same reason summary judgment is not proper on the basis of the unclean hands doctrine, so it is on the basis that the Suters acquiesced in the appellees' conduct. While they may have to an extent participated in the use of corporate assets for their personal benefit, the allegations in the complaint, if true, go far beyond the Suters' admitted uses.

In the interest of judicial efficiency, there is, of course, a limitation on the time the parties have to complete discovery; in fairness to all parties such a limitation is most easily expressed in a pretrial order. On remand, the court shall afford the Suters a reasonable time to complete discovery. Summary judgment motions by either party may then be properly considered.

Based on the forgoing, the summary judgment is hereby vacated and the case remanded to the circuit court for proceedings consistent with this opinion.

ALL CONCUR.