RENDERED:  APRIL 2, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0152-MR

STUART WAYNE WRIGHT                                                APPELLANT

v.                    APPEAL FROM BULLITT CIRCUIT COURT
                    HONORABLE RODNEY BURRESS, JUDGE
                         ACTION NO. 19-CI-00326

FRANK L. MILLER                                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; GOODWINE AND KRAMER, JUDGES.

CLAYTON, CHIEF JUDGE:  Appellant, Stuart Wayne Wright, appeals the Bullitt

Circuit Court's order granting summary judgment to Appellee, Frank L. Miller.

For the following reasons, we affirm.

## BACKGROUND

This case involves the ownership of a 1973 Glen house trailer with Vehicle Identification Number SN26L204ES1906 (hereinafter, "manufactured home")[1] located on real property owned by Wright. Miller has title to the manufactured home, but Wright claims the manufactured home is affixed to his real property and, thus, he owns it.

The manufactured home at issue was made in 1973. It was then transported to the real property at issue and placed on a foundation.

In 2001, Phillip and Sara Squires purchased the real property and acquired the title to the manufactured home. To finance the purchase, the Squires obtained a mortgage in 2001 and again in 2003. Wright claims the Squires' mortgages included the manufactured home because the mortgages included "all improvements" on the property, while Miller claims the mortgages were silent as to the inclusion of the manufactured home. Regardless, in 2012, the Squires failed

---

[1] Wright refers to the 1973 Glen house trailer as a "manufactured home," while Miller refers to it as a "house trailer." A "manufactured home" refers to a dwelling built to conform to the National Manufactured Housing Construction and Safety Standards Act of 1974, under which the United States Department of Housing and Urban Development (HUD) promulgated certain regulations. The 1973 Glen house trailer was built before the HUD regulations took effect. However, the term "mobile home" (also referred to as a "house trailer") has been replaced by the term "manufactured home" under Kentucky law. *See* Kentucky Revised Statutes (KRS) 186.650 (amended, effective July 15, 1994, to substitute the term "manufactured home" for the term "mobile home" in KRS Chapters 186 and 186A); *see also* 53A AM. JUR. 2D *Mobile Homes and Trailer Parks* § 7, n.7 (2021) (citing 42 United States Code Annotated §§ 5401, *et seq*. as amended by United States Public Law (Pub. L.) No. 96-399, § 308(c)(4) and Pub. L. No. 97-35, § 339B(c)).

to make their mortgage payments and foreclosure proceedings were filed. As a result, in 2013, the Master Commissioner sold the property to the Federal Home Loan Mortgage Corporation (FHLMC).

In August 2013, FHLMC sold the property to Wright. The purchase contract between FHLMC and Wright specifically disclosed that, although a manufactured home sat upon the property, FHLMC did not have title to it:

> [Wright] agrees and acknowledges that [FHLMC] has been unable to obtain title to the Home, and that evidence of title and title insurance, including an ALTA 7 Endorsement,[2] may not be available nor issued on the Home. Notwithstanding the foregoing, [Wright] is still desirous of purchasing the Property.

Shortly after Wright purchased the property, on August 28, 2013, the Squires obtained a duplicate certificate of title[3] to the manufactured home from the Kentucky Transportation Cabinet (KTC). Then, on September 3, 2013, the Squires transferred that title and, thus, ownership of the manufactured home to Miller.

Neither party mentions what, if anything, transpired between 2013 and 2019, when Wright filed the underlying action against Miller. However,

---

[2] "ALTA" stands for American Land Title Association. An ALTA 7 Endorsement is issued by a title insurance company regarding whether a manufactured home situated on the insured land is included in the policy definition of "land."

[3] Pursuant to KRS 186A.245(1), "[i]f a certificate of title is lost, stolen, mutilated, or destroyed or becomes illegible, the owner or legal representative of the owner named in the certificate shall promptly make application to the county clerk for and may obtain a duplicate, upon furnishing information satisfactory to the Department of Vehicle Regulation."

Wright's complaint alleges that, even though he bought the real property, Miller claimed he had a right to evict him from the manufactured home that sits upon that real property. In his lawsuit, Wright requested the circuit court to quiet title to the manufactured home.

After answering discovery, Miller moved for summary judgment. Miller claimed that a manufactured home remains personal property until converted into real property using the statutory procedure set forth in KRS 186A.297. And, because the manufactured home was never converted to real property, Miller argued he had title to the manufactured home and owned it as personal property.

On January 8, 2020, the circuit court granted summary judgment to Miller. The circuit court held that Wright had not produced any evidence that the previous owner of the manufactured home executed and filed an affidavit of conversion to real estate with the county clerk as set forth in KRS 186A.297(1). Therefore, the manufactured home remained personal property and did not transfer to Wright when he purchased the real property.

This appeal followed.

STANDARD OF REVIEW

The standard of review for an appeal of a summary judgment is "whether the trial court correctly found that there were no genuine issues as to any

material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996); Kentucky Rules of Civil Procedure (CR) 56.03. The trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Further, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id*. at 482. "An appellate court need not defer to the trial court's decision on summary judgment and will review the issue *de novo* because only legal questions and no factual findings are involved." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004).

ANALYSIS

Manufactured homes and real property have a unique relationship. Is the manufactured home part of the real property upon which it sits or is the manufactured home personal property? If the manufactured home is personal property, how does it become real property?

Under Kentucky law, a manufactured home is considered personal property, and its title is registered with the KTC in the same fashion as a car or a boat. A manufactured home remains personal property unless it is transformed

into part of the real property upon which it sits. So, if a person owns a parcel of land and owns a manufactured home located on that land, she owns two separate property interests: one in real property (the land) and the other in personal property (the manufactured home). If this owner were to sell the land, title to the manufactured home does not transfer to the new owner through the deed. The manufactured home must first be converted into real property.

Kentucky law provides the procedure for converting a manufactured home into real property. Under KRS 186A.297(1), "the owner may execute and file an affidavit of conversion to real estate with the county clerk of the county in which the real estate is located." In the affidavit, the owner "shall attest to the fact that the home has been or will be permanently affixed to the real estate and be accompanied by a surrender of the Kentucky certificate of title." *Id.* Finally, "[t]he county clerk shall file the affidavit of conversion to real estate in the miscellaneous record book." *Id.*

Once the affidavit of conversion to real estate and the surrender of title is filed, the manufactured home "shall be deemed" "as an improvement to the real estate upon which it is located." KRS 186A.297(2); *see Bowling v. Appalachian Federal Credit Union*, 515 S.W.3d 686, 689 (Ky. App. 2017). The property valuation administrator is furnished with a copy of the affidavit of conversion to real estate "for inclusion in the real property tax rolls of the county."

-6-

KRS 186A.297(2). Notably, if any unreleased lien is displayed on the certificate of title, the county clerk "shall not accept a surrender" of the title "unless it is accompanied by a release of the lien." *Id.*

For his appeal, Wright claims the circuit court erred in granting summary judgment to Miller because: (1) he has an ownership interest in the manufactured home because it is a permanent fixture on the land he purchased; (2) he should not have had to produce evidence that the manufactured home was converted into real property; (3) he did not have an opportunity to fully conduct discovery; and (4) the circuit court did not consider the "unclean hands doctrine."

For his first claim of error, Wright claims the manufactured home was affixed to the property as early as 1995 because its title history reflects that Lillian Parrish was the owner at that time and her "title status" was listed as "no title." Thus, he argues the manufactured home was already a fixture on the real property by 1995 and when the Squires purchased the property in 2001, the deed transferred both the manufactured home and the real property. Wright claims KRS 381.200(1), which provides that "[e]very deed, unless an exception is made therein, shall be construed to include all buildings, privileges and appurtenances of every kind attached to the lands therein conveyed[,]" supports his argument that the Squires' deed included the attached manufactured home. Moreover, Wright asserts that the Squires' mortgages must have included the manufactured home due

to the amount of money they borrowed for the property and the Squires' certificate of title was meaningless. Finally, Wright contends that KRS 186A.297, which the circuit court relied upon to hold that the manufactured home was never converted to real property, does not control because it did not become effective until 2000, which was after the manufactured home was already affixed to the land.

In response, Miller argues the manufactured home was not converted into real property under either KRS 186A.297 or the prior common law. The title history reflects that the Squires acquired title to the manufactured home on June 8, 2001. They also had a duplicate title issued on August 28, 2013. This proves that the manufactured home remained personal property with a title when the Squires purchased the land in 2001 and after the foreclosure in 2013. Also, Miller contends that the amount paid by the Squires does not prove that the manufactured home was included in their mortgages. Finally, Miller claims the Squires' mortgages were silent as to the manufactured home, which indicates it was not included therein.

As explained, simply because a manufactured home is located on real property does not mean the manufactured home is a permanent fixture or part of that real property. Unless the statutory procedure set forth in KRS 186A.297 is followed, the manufactured home remains personal property and is separate from the real property upon which it sits. *Bowling*, 515 S.W.3d at 688 (holding "a

manufactured home may become 'permanently affixed' to real property if the mandates of KRS 186A.297 are fulfilled.").  Until these steps are taken, case law holds that the manufactured home remains personal property.  *Barnette v. Grizzly Processing, LLC*, 809 F. Supp. 2d 636, 649 (E.D. Ky. 2011) (holding owners had not complied with KRS 186A.297, so manufactured home remained personal property); *Citizens Nat'l Bank of Jessamine County v. Washington Mut. Bank*, 309 S.W.3d 792, 796 (Ky. App. 2010) (footnote omitted) ("There is no question that Reynolds did not comply with the requirements of KRS 186A.297 and, therefore, the manufactured home remains personal property.").

While Wright claims the manufactured home was converted into real property before the Squires purchased the property in 2001, the active certificate of title proves otherwise.  By way of illustration, in the case of *In re Starks*, No. 10-22108, 2011 WL 248521 (Bankr. E.D. Ky. Jan. 24, 2011), a federal bankruptcy court sitting in Kentucky considered whether a manufactured home somehow lost its character as personal property becoming either part of the real estate or a fixture and subject to a mortgage.  The court held that argument ignored the fact that an active certificate of title existed for the manufactured home, which had not been surrendered.  *Id.* at *3-4.  The court dismissed the argument that Kentucky's version of Article 9 of the Uniform Commercial Code[4] rendered the manufactured

---

[4] *See* KRS 355.9-502.

-9-

home a fixture subject to a mortgage because KRS 186A.297 provides the sole method for converting a manufactured home to real estate. *Id.* at *3. Similarly, the manufactured home at issue in this case did not lose its character as personal property because an active certificate of title exists, which is held by Miller.

Also, we conclude that Wright's argument that KRS 186A.297 does not apply because that statute was enacted in 2000 and after the manufactured home was affixed to the real property is not supported by Kentucky case law. In *Hiers v. Bank One, West Virginia, Williamson, NA*, 946 S.W.2d 196 (Ky. App. 1996), which was decided in 1996, the Court held that with respect to "any property for which a certificate of title is required by KRS Chapter 186A, a security interest in that property may be perfected or discharged only by a notation in that vein on the certificate of title." *Id.* at 198. Here, KRS Chapter 186A required the manufactured home to have a title. KRS 186A.070(1) states that any "state resident owner" of a manufactured home must obtain a certificate of title. The title history evidence does not reflect any security interest against the manufactured home, contrary to Wright's argument that the manufactured home was part of the real property that was foreclosed upon when the Squires defaulted on their mortgages.

Additionally, Wright admitted that his purchase contract with FHLMC, which bought the property in the foreclosure sale, did not include title to

the manufactured home.  Attached to Wright's response to summary judgment was the purchase contract addendum.  In that addendum, which Wright signed, he acknowledged that FHLMC had been unable to obtain title to the manufactured home located on the real property.  Thus, Wright knew the title to the manufactured home was not included in his purchase.

Because Miller's certificate of title established that the manufactured home remained personal property, no genuine issue of material fact existed as to the ownership of the manufactured home.  At that point, the burden shifted to Wright to present "at least some affirmative evidence" to avoid summary judgment.  *Steelvest*, 807 S.W.2d at 482.  Because Wright was unable to produce such evidence, we conclude that the circuit court did not err in granting summary judgment to Miller.

For Wright's second claim of error, he argues that he should not have had to produce evidence that the manufactured home had been previously converted into real property.  As stated above, once Miller demonstrated he had title to the manufactured home, the burden did, indeed, shift to Wright to present some evidence.  *Id.*  Moreover, the circuit court did not hold that Wright *had to produce* evidence that the previous owner of the manufactured home executed and filed an affidavit of conversion to real estate with the county clerk.  Instead, the

circuit court held that Wright *had not produced* any such evidence. The circuit court did not err in this conclusion.

For Wright's third claim of error, he argues he did not have a full opportunity to conduct discovery before the circuit court granted summary judgment to Miller. Wright claims Miller objected and did not fully respond to the discovery he propounded. If Miller had fully responded, Wright claims he would have received the Squires' certificate of title, a copy of any affidavit or application of the Squires to get their duplicate title, and information regarding Miller's payment to the Squires for the manufactured home, which could question Miller's claim of valid title.

In response, Miller claims that Wright never requested supplemental discovery responses and never filed a motion to compel regarding the adequacy of his responses. Miller further claims that Wright only asked for additional time for discovery in his summary judgment response.

We see no error. Wright does not allege that the circuit court refused to grant him additional time to conduct discovery. Likewise, the record does not reflect that Wright requested supplemental discovery or that Wright properly made a motion to compel a ruling on any of Miller's objections. "[T]he hope that something will come to light in additional discovery is not enough to create a

genuine issue of material fact." *Benningfield v. Pettit Environmental, Inc.*, 183 S.W.3d 567, 573 (Ky. App. 2005).

> The curtain must fall at some time upon the right of a litigant to make a showing that a genuine issue as to a material fact does exist. If this were not so, there could never be a summary judgment since "hope springs eternal in the human breast." The hope or bare belief, like Mr. Micawber's, that something will "turn up," cannot be made basis for showing that a genuine issue as to a material fact exists.

*Neal v. Welker*, 426 S.W.2d 476, 479-80 (Ky. 1968) (internal citation omitted). "'Belief' is not evidence and does not create an issue of material fact." *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990). "A party's subjective beliefs about the nature of the evidence is not the sort of affirmative proof required to avoid summary judgment." *Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. App. 2007). Wright's subjective belief that further discovery could have questioned the validity of Miller's title to the manufactured home does not create a genuine issue of material fact to avoid summary judgment.

For Wright's final claim of error, he argues the circuit court erred by not considering the "unclean hands doctrine." Essentially, Wright claims the Squires obtained the duplicate certificate of title to the manufactured home shortly after he purchased the real property. Then, they immediately transferred that title to Miller for an alleged nominal sum. He claims this amounted to unconscionable conduct.

-13-

In response, Miller claims Wright never produced any evidence of wrongdoing, let alone wrongdoing sufficient to invoke the "unclean hands doctrine." The Squires acquired title to the manufactured home in 2001, at the time they purchased the real property, and they had a duplicate title issued on August 23, 2013. Miller asserts that the Squires had the right to sell the manufactured home to whomever they wanted for whatever amount. Moreover, Miller claims the "unclean hands doctrine" is an equitable defense the circuit court did not need to consider to decide Miller's summary judgment motion.

"Under the 'unclean hands doctrine,' a party is precluded from judicial relief if that party 'engaged in fraudulent, illegal, or unconscionable conduct' in connection 'with the matter in litigation.'" *Mullins v. Picklesimer*, 317 S.W.3d 569, 577 (Ky. 2010) (quoting *Suter v. Mazyck*, 226 S.W.3d 837, 843 (Ky. App. 2007)). A circuit court's decision to invoke this equitable defense rests within its sound discretion. *Id.*

While Miller may have obtained title to the manufactured home for a nominal sum and in a time frame that seems unfair or questionable to Wright, the circuit court was within its discretion not to invoke the equitable defense of the "unclean hands doctrine."

> Equity is only a supplement to the law for when there is no remedy at law. But it is a simple tenet that if there *is* a statute or case precedent or rule going a certain way, a trial court may not depart from it on the basis of

equity. Law trumps equity.

*Bell v. Commonwealth, Cabinet for Health and Family Services, Dep't for Community Based Services.*, 423 S.W.3d 742, 747-48 (Ky. 2014) (emphasis in original). Here, the circuit court made a ruling based on KRS 186A.297 and Kentucky precedent. The circuit court was within its discretion not to consider the "unclean hands doctrine" when it granted summary judgment to Miller.

CONCLUSION

For the foregoing reasons, we affirm the order granting summary judgment to Miller.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| George R. Carter<br>Louisville, Kentucky | John R. Benz<br>Louisville, Kentucky |