RENDERED: SEPTEMBER 17, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1625-MR

JOHN J. RICE                                                                                     APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE AUDRA J. ECKERLE, JUDGE
ACTION NO. 16-CI-003828

HERITAGE ENTERPRISES, INC.                                                   APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

DIXON, JUDGE: John J. Rice appeals the order dismissing his claims against

Heritage Enterprises, Inc., ("Heritage") entered by the Jefferson Circuit Court on

November 25, 2020. After careful review of the briefs, the record, and the law, we

affirm.

## FACTS AND PROCEDURAL BACKGROUND

During his lunchbreak on August 27, 2015, Rice visited a McAlister's restaurant owned by Heritage. As he entered the restaurant, he noticed an employee mopping the floor; a mop bucket and yellow "wet floor signs" were placed nearby. While Rice stood in line, he observed the employee mopping around the feet of customers. At approximately 1:50 p.m., as he was exiting the restaurant, Rice slipped and fell on the wet floor – still being mopped – and was injured.

On August 9, 2016, Rice[1] filed the instant lawsuit alleging Heritage was negligent for its failure to "maintain its premises in a reasonably safe condition" and failure to adequately warn of the danger of the wet floor. Significant discovery was accomplished over the next four years, including written discovery and depositions of Rice and two employees of Heritage: Courtney Krekel, who was mopping the floor at the time of the accident, and Mark Wagoner, the manager of the restaurant.[2] Both testified that mopping floors is considered "side work" and is listed as such in the "side work checklist." The side work

---

[1] Rice's wife was also initially a plaintiff, alleging loss of consortium, but her claim was voluntarily dismissed prior to this appeal.

[2] Various motions to compel discovery were also filed and granted over the course of this litigation.

checklist indicates the floor is to be mopped between 2:00 p.m. and 3:00 p.m. in marked-off sections.

Heritage eventually moved the trial court for summary judgment and provided an affidavit from its corporate representative, Cathy Vogt.[3] Vogt testified the time set forth in the side work checklist "is only a guideline, and does not preclude the mopping of floors from occurring before 2:00 or after 3:00." Vogt further stated that Krekel did not violate any policies or procedures by mopping the floor at the time or in the manner demonstrated in the surveillance video. After the matter was fully briefed, the trial court granted summary judgment in favor of Heritage, and this appeal followed.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[4] 56.03. An appellate court's role in reviewing a summary judgment is to determine whether

---

[3] Although Vogt was scheduled to be deposed, Rice cancelled the deposition because Heritage failed to provide a working copy of the surveillance footage. Heritage made it known to Rice and the trial court that it was encountering problems with making a viewable copy, but stated viewing was available to Rice at the store.

[4] Kentucky Rules of Civil Procedure.

the trial court erred in finding no genuine issue of material fact exists and the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). A grant of summary judgment is reviewed *de novo* because factual findings are not at issue. *Pinkston v. Audubon Area Cmty. Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006) (citing *Blevins v. Moran*, 12 S.W.3d 698 (Ky. App. 2000)).

## ANALYSIS

On appeal, Rice argues the trial court erred in granting summary judgment because (1) discovery had not yet been completed, and (2) the trial court improperly made findings of fact that should be reserved for a jury. We address each argument, in turn.

First, it is well-established that "summary judgment is only proper after a party has been given ample opportunity to complete discovery, and then fails to offer controverting evidence." *Pendleton Bros. Vending, Inc. v. Commonwealth Fin. & Admin. Cabinet*, 758 S.W.2d 24, 29 (Ky. 1988) (citing *Hartford Ins. Grp. v. Citizens Fidelity Bank & Trust Co.*, 579 S.W.2d 628 (Ky. App. 1979)). "It is not necessary to show that the respondent has actually completed discovery, but only that respondent has had an opportunity to do so." *Hartford*, 579 S.W.2d at 630.

In *Hartford*, a period of approximately six months between filing of the complaint and the grant of summary judgment was found to be a sufficient time in which to conduct discovery. However, this is not a bright-line rule, and the appropriate time for discovery necessarily varies from case to case depending upon its complexity, availability of information sought, and the like. *See Suter v. Mazyck*, 226 S.W.3d 837, 842 (Ky. App. 2007), *as modified* (Jul. 13, 2007).

Here, more than four years elapsed between the filing of the complaint and the grant of summary judgment. This is not a complicated case, nor was Rice unable to access the information requested.[5] At the time the motion was filed, a trial date, as well as a deadline for filing motions for summary judgment, had already been set[6] and substantial discovery conducted. Most telling, however, is the fact that Rice points to nothing which would preclude summary judgment that could not have been accomplished during those four-plus years prior to its entry. Thus, we cannot say the trial court's grant of summary judgment herein was premature.

We now turn to Rice's second argument. Although the landscape of premises liability has changed over the years, the basic requirements of duty,

---

[5] Although part of the delay in receiving requested information may be attributed to Heritage, Rice is also at least partially responsible for his own delays in viewing the surveillance footage.

[6] Trial was set for December 8, 2020. Motions for summary judgment were to be filed 75 days prior – on or before September 24, 2020. The motion herein was filed on the last allowable date pursuant to the order.

breach, causation, and damages remain. Rice argues the trial court erred in finding

Heritage did not breach its duty to him.

In support of this argument, Rice, as an invitee, asserts the wet floor

constituted an "unreasonable risk." In Kentucky,

> [a]n unreasonable risk is one that is recognized by a
> reasonable person in similar circumstances as a risk that
> should be avoided or minimized or one that is in fact
> recognized as such by the particular defendant. **Put
> another way, a risk is not unreasonable if a
> reasonable person in the defendant's shoes would not
> take action to minimize or avoid the risk. Normally,
> an open-and-obvious danger may not create an
> unreasonable risk**. Examples of this may include a
> small pothole in the parking lot of a shopping mall; steep
> stairs leading to a place of business; or perhaps even a
> simple curb. But when a condition creates an
> unreasonable risk, that is when a defendant should
> anticipate that the dangerous condition will cause
> physical harm to the invitee notwithstanding its known or
> obvious danger, liability may be imposed on the
> defendant as a breach of the requisite duty to the invitee
> depending on the circumstances.

*Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 914 (Ky. 2013), *as

corrected* (Nov. 25, 2013) (emphasis added) (internal quotation marks and

footnotes omitted).[7]

---

[7] In *Shelton*, the Court held there:

> remains a question of material fact regarding whether Cardinal Hill
> properly fulfilled its duty of reasonable care. The record has not
> been adequately developed regarding any alternative solutions,
> warnings, or precautions that Cardinal Hill could have taken in
> maintaining reasonably safe premises to prevent Shelton's injury.

Rice's argument can basically be boiled down to: mopping the restaurant's floor created an unreasonable risk – a wet floor. The Supreme Court of Kentucky addressed another case pertaining to a wet floor caused by rain in *Dick's Sporting Goods, Inc. v. Webb*, 413 S.W.3d 891 (Ky. 2013), *as corrected* (Nov. 25, 2013). It summarized the facts of that case, stating:

> Betty Webb and her neighbor ventured out in pouring rain to do some Christmas shopping at Dick's Sporting Goods. Upon her arrival, Webb noticed puddles in the parking lot and proceeded cautiously to the store's entrance. As Webb entered the store, she immediately stepped onto floor mats that Dick's Sporting Goods had placed in the entryway to soak up water tracked in by customers. Webb saw the floor mats had shifted from their customary parallel formation into a "V" shape. A visible pool of water had formed in the center of the "V." According to Webb, the mats were wet and spongy. **Dick's Sporting Goods placed no signage at the front of the store to warn customers that the floor may be wet**.
>
> A crowd of other customers attempting to enter Dick's Sporting Goods at the same time surrounded Webb. In an attempt to avoid the visible pool of water in the "V," Webb stepped off of one of the mats and tried to step onto a tile that appeared to her to be dry. But in fact the tile was wet. As she stepped onto the tile, she slipped and fell forward, injuring her knees, arms, and shoulders.

> Further, a reasonable juror could determine that Cardinal Hill had reason to foresee that Shelton would proceed to encounter the wires because the advantage of doing so outweighed the risk.

*Id.* at 917.

*Id.* at 893-94 (emphasis added). In that case, no effort was made to mop or remove the water. The Court noted "a possessor of land, has a duty to maintain reasonably safe premises for its patrons. This duty involves the responsibility to discover unreasonably dangerous conditions on the land and **either correct them or warn of them**." *Id.* at 897 (emphasis added) (internal quotation marks and footnote omitted). The Court in *Dick's* observed it was "the failure to act which created the condition" of the wet floor in that case. *Id*. at 898.

Even so, the Court did not view *Dick's* as an open and obvious case. *Id*. at 893. The Court ultimately held "Dick's Sporting Goods had an affirmative duty to maintain its store premises in a reasonably safe condition, and whether Dick's Sporting Goods breached that duty is a question for the jury to decide" because "[w]hether or not the simple use of mats – without maintaining watch over them or making sure they continued to perform their intended function adequately – was sufficient to satisfy the duty of reasonable care owed by Dick's Sporting Goods, is a question [of fact] for the jury." *Id.* at 893, 899-900.

The case herein is distinguishable, however.[8] Here signs were used to warn of the wet floor, and Rice observed an employee actively mopping the

---

[8] The case herein is more like an older case which – although the cause for water on the floor was due to the natural condition of flooding – also involved mopping that was observed prior to a patron's fall. In *Bridgford v. Stewart Dry Goods Co.*, 191 Ky. 557, 231 S.W. 22, 23 (1921), Kentucky's highest court at the time observed that the plaintiff therein:

floor. We agree with the trial court that, under the facts of this case, the restaurant

discharged its duty of care owed to Rice by acting reasonably in providing

sufficient warning of the wet floor even though Rice was already aware the floor

was wet.[9] Thus, we need not engage in whether his fall was foreseeable. Heritage

fulfilled its duty of care and "nothing further is required." *Shelton*, 413 S.W.3d at

911; *see Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 298 (Ky. 2015) ("But it is

just as true under comparative fault as it has always been that if a landowner has

done everything that is reasonable under the circumstances, he has committed no

> knew of the very condition which she claims rendered the floor unsafe, and her accident was not the result of defendant's failure to give her notice or warning, even if it be conceded that ordinary care required notice that an ordinary wood floor in a well-lighted room was moist or damp, which is at least doubtful. [*See Am. Tobacco Co. v. Adams*, 137 Ky. 414, 125 S.W. 1067 (1910).] Certain it is that the mere fact the floor was moist or damp did not render it so dangerous as to require of defendant, in the exercise of ordinary care for the safety of its customers, that it should place barricades across the entrance to the basement and prevent its use altogether until the floor was entirely dried out. We are inclined to the opinion that proof simply that an ordinary wood floor in a well-lighted room is moist or damp is no evidence that it is not in a reasonably safe condition for use, but, if mistaken in that, **we are quite sure that one who uses such a floor with full knowledge of its condition assumes any and all risks incident to its use**. We are therefore of the opinion that the trial court did not err in directing a verdict in favor of the defendant.

(emphasis added). As previously noted, the landscape of premises liability has changed much since *Bridgford* was published. However, its common-sense analysis – like that employed by the trial court herein – should not be completely discarded.

[9] Even so, Rice insists mopping should not have occurred prior to 2:00 p.m. and that sections should have been marked differently. However, Rice has failed to support these assertions; accordingly, we need not address them further.

breach, and cannot be held liable to the plaintiff."); *see also Dishman v. C & R Asphalt, LLC*, 460 S.W.3d 341, 347 (Ky. App. 2014).[10] Consequently, we affirm the trial court's judgment that Heritage did not breach its duty of care owed to Rice.

## CONCLUSION

Therefore, and for the foregoing reasons, the order of the Jefferson Circuit Court is AFFIRMED.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Thomas L. Todd
James M. Yoder
Lexington, Kentucky

BRIEF FOR APPELLEE:

Deanna M. Marzian Tucker
Matthew R. Londergan
Louisville, Kentucky

---

[10] In *Dishman*, although the hazard was "incredibly open and obvious[,]" warning signs were still placed around the construction area. The plaintiff in that case was injured when she entered the area after one of the barriers had been temporarily removed to allow a construction vehicle to pass through. Summary judgment was properly granted therein. The trial court here properly relied on *Dishman*.