Nardos A. BENTON, Appellant

v.

BOYD & BOYD, PLLC and Traci H. Boyd, Appellees.

No. 2010–CA–002058–MR.

Court of Appeals of Kentucky.

July 6, 2012.

Rehearing Denied Nov. 19, 2012.

Bernard Pafunda, Lexington, KY, for Appellant.

Calvin R. Fulkerson, J. Christian Lewis, Lexington, KY, for Appellees.

Before COMBS and MOORE, Judges; LAMBERT,[1] Senior Judge.

## OPINION

COMBS, Judge:

This is a case involving a lawsuit for legal malpractice filed by Dr. Nardos Benton against the attorney and the law firm representing her in her divorce action. The Fayette Circuit Court granted summary judgment to attorney Traci Boyd and to the law firm of Boyd & Boyd, PLLC, and dismissed the legal malpractice action. Dr. Benton has appealed that dismissal.

Boyd was one of several attorneys who successively represented Dr. Benton in her contentious divorce from Scott Benton. Before Boyd undertook her representation, Dr. Benton signed an agreement on June 26, 2008, in which she was to receive all of the real estate that the parties owned in exchange for her equalization payment of $195,000 to Scott. Her payment was due in several sizeable installments. The agreement also required Dr. Benton to transfer the entire value of her 401(k) retirement account acquired through the St. Claire Medical Center to Scott within fifteen days of the entry of the divorce decree.

On September 3, 2008, Dr. Benton filed a motion seeking to declare that the settlement agreement was unconscionable. Following a hearing, the motion was overruled. Accordingly, on October 28, 2008, the court entered the decree of dissolution, which incorporated the settlement agreement.

Dr. Benton retained Boyd as appellate counsel on December 1, 2008. The time to file an appeal from the decree of dissolution had expired. No longer having the leverage of an appeal, Boyd undertook negotiations with Scott and his counsel. Dr. Benton claimed that she did not have the resources to pay her agreed obligation. During the negotiations, Dr. Benton informed her counsel and Scott's counsel that she had liquidated the St. Claire retirement fund and had spent the money.

On January 30, 2009, Scott filed a motion asking the court to hold Dr. Benton in contempt for her failure to honor the terms of the settlement agreement. On February 13 and 18, Dr. Benton signed affidavits swearing that she had already liquidated her St. Claire 401(k) retirement account. On February 20, 2009, the court held a hearing to determine whether Dr. Benton was in contempt for failing to pay Scott according to the terms of the agreement. On February 27, 2009, the court entered an order finding Dr. Benton in contempt of court and imposed a penalty of 180 days of incarceration. The court suspended the sentence for 30 days in order to give her an opportunity to purge the contempt order by payment. Approximately one week after the entry of this order, Dr. Benton fired Boyd as her counsel.

Subsequently, in a hearing on March 27, 2009, the court learned that Dr. Benton's sworn statements regarding her retirement account were false. Dr. Benton had not liquidated it nor had she spent the

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

funds. In fact, she provided copies of the checks to Scott's counsel which showed that she obtained the funds on February 10, 2009. The court chastised Dr. Benton for misrepresenting the disposition of the account; it did not alter its finding of contempt. However, it acknowledged that questions remained concerning the amount of money that Dr. Benton actually had the ability to pay to Scott. Therefore, it ordered a due process hearing to be held on May 19, 2009.

Following the due process hearing, the court found that Dr. Benton had the ability to pay Scott $75,000 and gave her 30 days in which to comply. The court also imposed a sentence of 120 days in jail. At first, Dr. Benton did not pay Scott and was incarcerated in the Fayette County jail. After 30 days, she paid him approximately $67,000 and was released.

On February 16, 2010, Dr. Benton filed a lawsuit against Boyd and the law firm of Boyd & Boyd, PLLC, alleging legal malpractice. She sought damages resulting from the time that she spent in jail. On November 4, 2010, the Fayette Circuit Court granted Boyd's motion for summary judgment and dismissed the lawsuit. This appeal follows.

Summary judgment is a device utilized by the courts to expedite litigation. *Ross v. Powell*, 206 S.W.3d 327, 330 (Ky.2006). It is a "delicate matter" because it "takes the case away from the trier of fact before the evidence is actually heard." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky.1991). In Kentucky, the movant must prove that no genuine issue of material fact exists. Additionally, the movant "should not succeed unless his right to judgment is shown with such clarity that there is no room left for controversy." *Id.*

■ The trial court must assess the evidence in favor of the nonmoving party. *City of Florence, Kentucky v. Chipman*, 38 S.W.3d 387, 390 (Ky.2001). In order to withstand entry of summary judgment, the nonmoving party must present "at least some affirmative evidence showing the existence of a genuine issue of material fact." *Id.* On appeal, the standard of review that we utilize is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996). Because summary judgments do not involve factfinding, we review them *de novo*. *Pinkston v. Audubon Area Community Services, Inc.*, 210 S.W.3d 188, 189 (Ky.App. 2006).

■ Dr. Benton contends that the court was premature in granting the motion for summary judgment before adequate discovery was taken. We agree that summary judgment should not be granted unless "a party has been given ample opportunity to complete discovery." *Pendleton Bros. Vending, Inc. v. Commonwealth of Kentucky Fin. & Admin. Cabinet*, 758 S.W.2d 24, 29 (Ky.1988). (Citing *Hartford Ins. Group v. Citizens Fid. Bank & Trust Co.*, 579 S.W.2d 628 (Ky.App.1979)). This holding has recently been reiterated by our Supreme Court, cautioning trial courts "not to take up these motions prematurely." *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky.2010).

However, we do not believe that the court was premature in this case. It had a very complete record. The family court judge was thorough and precise in all of her rulings, explaining in detail why she found Dr. Benton in contempt. Additionally, Boyd testified under oath at the due process hearing, rendering the need for a

deposition redundant—if not moot. Dr. Benton has not provided specific examples of what discovery could have been undertaken that would have affected the outcome had it been conducted. Thus, we do not conclude that the trial court prematurely considered the summary judgment motion.

The Supreme Court has provided guidance as to the requisite elements of a legal malpractice claim:

A plaintiff in a legal malpractice case has the burden of proving "1) that there was an employment relationship with the defendant/attorney; 2) that the attorney neglected his duty to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances; and 3) that the attorney's negligence was the proximate cause of damage to the client." Based on these factors, a legal malpractice case is the "suit within a suit." To prove that the negligence of the attorney caused the plaintiff harm, the plaintiff must show that he/she would have fared better in the underlying claim; that is, but for the attorney's negligence, the plaintiff would have been more likely successful.

*Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003). (Footnotes and internal citations to footnotes omitted.)

The parties do not dispute that Dr. Benton and Boyd had an employment relationship. However, Dr. Benton contends that Boyd was negligent by advising her to ignore the judgment and not make any payments to Scott while Boyd was attempting negotiation. Dr. Benton also claims that Boyd advised her to file the false affidavits. Dr. Benton asserts that as a result of Boyd's negligence, she suffered damages caused by her incarceration.

The trial court found that Dr. Benton was equitably estopped from asserting her negligence claims; *i.e.,* 1) that Boyd had advised her not to transfer the 401(k) funds; 2) that Boyd advised her to file false affidavits; and 3) that Boyd advised her to hide the existence of the 401(k) funds from the court.

▆▆▆ The elements of equitable estoppel include:

(1) Conduct, including acts, language and silence, amounting to a representation or concealment of material facts; (2) the estopped party is aware of these facts; (3) these facts are unknown to the other party; (4) the estopped party must act with the intention or expectation his conduct will be acted upon; and (5) the other party in fact relied on this conduct to his detriment.

*Gray v. Jackson Purchase Prod. Credit Ass'n*, 691 S.W.2d 904, 906 (Ky.App.1985). The facts of this case fall squarely within this definition of equitable estoppel.

Dr. Benton remained silent in court on February 20 when both Boyd and Scott's counsel informed the court that the retirement account had been liquidated in November or December. Dr. Benton was the only person who knew the true status of the account. She had been quite vocal about all other matters that were considered in the hearing, but she remained notably silent when the 401(k) was discussed. Dr. Benton did not present the trial court with any evidence to show that Boyd was aware of the true state of the account. In fact, Dr. Benton admitted in court that she had signed two false affidavits. The record shows that Dr. Benton had ample opportunity to correct them but chose not to do so.

Additionally, Dr. Benton has not proven that she suffered damages attributable to Boyd's alleged negligence. The damages that Dr. Benton claims that she incurred are all related to her incarceration. It is clear from the record that Dr. Benton was solely responsible for receiving the 30–day sentence. The court gave her many opportunities to pay her obligations but she continually refused to comply. Boyd testified that she repeatedly advised Dr. Benton to pay *some* amount— even if she could not afford the entire obligation.[2] The court also encouraged Dr. Benton to pay some amount. It even stated that her lack of attempting to cooperate was one reason that it found Dr. Benton to be in contempt of court. Once jailed, she soon managed to secure enough money to pay Scott a significant portion of her obligation in order to secure her release.

Dr. Benton has not established the elements of legal malpractice. Therefore, we affirm the summary judgment and order of dismissal entered by the Fayette Circuit Court.

ALL CONCUR.

---

**2.** Boyd also testified that on more than one occasion, Dr. Benton said that she would rather go to jail than to pay Mr. Benton one dime.

