RENDERED:  MAY 14, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1922-MR

DEANE MINING, LLC                                                    APPELLANT


APPEAL FROM FAYETTE CIRCUIT COURT
v.        HONORABLE JOHN E. REYNOLDS, JUDGE
ACTION NO. 19-CI-02181


THE ELK HORN COAL COMPANY, LLC                         APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, JONES, AND K. THOMPSON, JUDGES.

JONES, JUDGE:  Appellant Deane Mining, LLC ("Deane") appeals the judgment

of the Fayette Circuit Court granting summary judgment to The Elk Horn Coal

Company, LLC ("Elk Horn").  Elk Horn brought suit seeking a declaration of

rights regarding the Amended Lease 1703, which Elk Horn contends was

terminated and voided on September 11, 2018.  Following review of the record and

applicable law, we AFFIRM for the reasons more fully explained below.

# I.  BACKGROUND AND PROCEDURAL HISTORY

On September 15, 2017, Elk Horn and Deane entered into a Lease Agreement (the "Lease") with respect to the Elk Horn No. 3 coal seam in Letcher County, Kentucky.  Pursuant to the lease terms, Deane was given the right to mine and process certain coal located in seam three in exchange for paying various fees and royalties to Elk Horn.  These payments were due each month.  The parties subsequently modified and supplemented the Lease on April 20, 2018, on grounds inconsequential to this case.  The Lease anticipated and addressed potential default and waiver that could result therefrom.  Section 3.17 of the Lease provided in part:

> **C. <u>Termination for Default.</u>**  In the Event of Default under Section 3.17 (A)(1), 3.17 (A)(2), 3.17 (A)(3), 3.17 (A)(5) or an Event of Default for which a cure period is provided above continues and is not fully cured as provided above, and as often as the same may occur, Lessor may, at its sole option, and in addition to any other remedies available to it hereunder, at law or in equity, immediately terminate this Lease, and declare all rights granted hereunder forfeited, whereupon this Lease and the leasehold created hereby shall immediately cease and terminate and be of no further force or effect.  Such termination shall not impair Lessor's rights to royalties and fees due or accrued up to the time of termination or thereafter if Lessee does not vacate upon termination.  After such termination, any entry onto the Leased Premises by Lessee, its employees, agents, or contractors, other than solely for reclamation purposes, which shall not include coal extraction or transportation, shall be considered a willful trespass. . . .
>
> . . . .

**J. Non Waiver.** No receipt by Elk Horn of money from Lessee after an Event of Default or termination of this Lease in any lawful manner shall: (1) reinstate, continue or extend the term of this Lease or affect any notice given to Lessee; (2) operate as a waiver of the right of Elk Horn to enforce the payment of royalties then due or falling due; or (3) operate as a waiver of the right of Elk Horn to recover possession of the Leased Premises or Leased Coal by proper suit, action, proceeding, or other remedy. Any and all such monies so collected will be deemed to be a payment on account of the use and occupation of the Leased Premises or, at the election of Elk Horn, on account of the liability of Lessee hereunder.

Record ("R.") at 51-52, 56-57. Section 3.19(R) of the Lease further dictates, "No waiver, release, modification or amendment of any of the terms, conditions or provisions of this Lease is valid unless it is in writing and duly executed by Elk Horn and Lessee."

Elk Horn contends that, from the inception of their relationship, Deane frequently failed to timely make payments including, but not limited to, the Production Royalty, Surface Royalty, and Overriding Royalty payments required under the Lease. Indeed, Deane admits that it frequently made payments a day late due to the nature of its wire transfer system.

However, according to Elk Horn the late payment issue reached a head in August of 2018. Elk Horn asserts that in August of 2018, Deane failed to timely pay Elk Horn $33,212.00. As a result, on August 28, 2018, Elk Horn sent Deane a "Notice of Default" specifying each of the events of Deane's nonpayment

- 3 -

and the amount owed. Deane received the Notice of Default on August 31, 2018. The Notice of Default alleged that Deane was past due on four separate categories of payments – transloading fees, production royalties on underground mined coal, surface royalties, and unmined mineral taxes.

Under the terms of the Lease, Deane was entitled to a ten-day cure window upon receipt of Elk Horn's Notice of Default during which Deane could cure its default or lodge a dispute as to the nature of the default. In accordance with the Lease, the Notice of Default provided that Deane had "[t]en (10) days from the date of this notice to cure this default. Nothing herein shall be construed as a waiver of additional rights Elk Horn may have under its agreement with Deane Mining and/or the law and [Elk Horn] further reserves those rights to be exercised at Elk Horn's discretion." R. at 79. However, Deane failed to make payment or communicate any concerns within the ten-day cure period, which ended on September 10, 2018.

Consequently, on September 11, 2018, Elk Horn issued a Notice of Termination notifying Deane that its lease had been terminated "in accordance with Section 3.17" of the Lease. The letter further provided:

> Deane Mining has failed to pay the production royalties for the month of July 2018.
>
> Deane Mining has failed to pay the Unmined Mineral Taxes due and owing at the time of this notice.

Deane Mining has also failed to pay related interest/late payment penalties under the related lease.

Deane Mining was previously provided a Notice of Default on August 28, 2018. These defaults have not been cured as required by the Lease.

Elk Horn's exercise of its termination right as set forth herein shall be effective upon receipt of this notice. Any coal removal after said date shall be an intentional trespass actionable against the individuals participating in the remove [sic] or sale of Elk Horn's coal.

Nothing contained herein shall be construed as a waiver of the additional rights Elk Horn has under or through Elk Horn's Lease No. 1703 and/or the laws of the Commonwealth of Kentucky. Elk Horn reserves such rights and claims to be exercised or asserted hereafter at Elk Horn's discretion.

R. at 83.

On September 13, 2018, two days after the cure period expired, Deane paid Elk Horn $24,389.00 – nearly $10,000.00 less than the full amount Elk Horn alleges it was owed. Elk Horn informed Deane that this payment would be applied against Deane's account but that its acceptance of payment would not reinstate the Lease. Elk Horn explained that the payment was "insufficient to cure all monetary defaults prior to the Termination Date." R. at 87. Elk Horn further averred that any further mining on Elk Horn's property would be construed as trespass.

On October 3, 2018, Elk Horn repeated this warning through the email of its employee, Joseph Funk, and demanded Deane cease any further loading or selling of Elk Horn's coal:

> [Elk Horn] has observed that Quest/Deane Mining continues to trespass upon [Elk Horn] mineral [sic] and continues to loan and sell our property. Quest/Deane Mining's lease with us has been terminated and [it] continues to owe [Elk Horn] amounts due for production, late fees and interest associated with the past due amounts.
>
> [Elk Horn] again requests that you not trespass upon our property until all issues are resolved and [Elk Horn] grants you the right to mine our coal.
>
> We have and will not reinstate this lease while amounts due to [Elk Horn] are outstanding (including recent production amounts that were due on Sept 25th) and any other items are fully addressed and properly memorialized.

R. at 90.

However, Deane's employee, Mark Jensen, responded, somewhat unclearly: "We are also in compliance with lease currently given terms. Happy to talk on phone but I feel there is [sic] other objectives you are trying to achieve here with harshness is [sic] letter." R. at 93.

On January 23, 2019, Elk Horn reiterated its stance on the Lease, writing:

> Elk Horn continues to be of the position the payments transmitted were insufficient to cure the monetary

- 6 -

> defaults. Therefore, Elk Horn's termination latter [sic] dated September 11, 2018 remains effective and any mining thereafter constitutes a trespass to Elk Horn's property interests for which any individual who has participated or is participating therein shall be liable.

R. at 95.

Despite receiving multiple notices of termination and trespass, Deane continued to mine tens of thousands of tons of Elk Horn's coal between September 2018 and May 2019. During this time, Deane periodically made payments to Elk Horn. Elk Horn accepted the payments but routinely followed up with reminders that the Lease was terminated and that Deane was now trespassing on Elk Horn's property. On May 15, 2019, after months of back-and-forth, Elk Horn issued a second Notice of Termination.

Deane presently maintains that the Lease is currently in full force and effect and continues to mine Elk Horn's coal. However, since May 2019, Elk Horn has not received any payments from Deane for royalties owed under the agreement, insufficient or not. Deane explained that it ceased payment upon Elk Horn's instruction to make no further payments until this litigation is resolved.

On July 12, 2019, Elk Horn filed a petition seeking a declaration of rights from the Fayette Circuit Court that the Lease terminated on September 11, 2018. Deane filed its answer on July 29, 2019. Discovery ensued, and Deane emailed an extensive corporate deposition notice to Elk Horn with a number of

- 7 -

topics apparently designed to learn more about the communications between the parties, Elk Horn's document management system, and the electronic systems used by Elk Horn to communicate with Deane and other similarly situated lessors. On August 29, 2019, Deane requested deposition dates and locations for several Elk Horn employees. Elk Horn agreed to a deposition date of September 13, 2019, and suggested deposing several Deane employees on the same day. However, on September 11, 2019, the parties agreed to postpone the deposition pending the results of written discovery. Deane did not attempt to reschedule.

On September 24, 2019, Elk Horn moved to amend its complaint as agreed to by Deane. Elk Horn did so on October 8, 2019, pleading that, if the Lease had not terminated on September 11, 2018, then it had at least terminated on May 15, 2019, upon its second Notice of Termination.

On October 21, 2019, Elk Horn filed a motion for summary judgment, arguing that the parties in fact agreed upon the facts rendered material by the express terms of the Lease. Deane opposed this motion, arguing that summary judgment was premature as Deane had not had any opportunity to take discovery and only thirteen days had passed since Elk Horn amended its complaint. Deane argued that there were unresolved issues as to the amounts owed under the lease and, to the extent any payments were late, whether Elk Horn was aware of the reason the payments were late and approved payment. Deane also argued that

Deane's breach was induced by its reliance on Elk Horn's past acceptance of late payments.

On November 21, 2019, the Fayette Circuit Court granted the motion and declared the lease between Elk Horn and Deane terminated as of September 11, 2018.

This appeal followed.

## II.  STANDARD OF REVIEW

"[S]ummary judgment is to be cautiously applied and should not be used as a substitute for trial" unless "there is no legitimate claim under the law and it would be impossible to assert one given the facts." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 483 (Ky. 1991); *Shelton v. Kentucky Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 916 (Ky. 2013), *as corrected* (Nov. 25, 2013).  A motion for summary judgment should be granted "[o]nly when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor" even when the evidence is viewed in the light most favorable to him.  *Steelvest*, 807 S.W.2d at 482; *Shelton*, 413 S.W.3d at 905.  To survive a properly supported summary judgment motion, the opposing party must have presented "at least some affirmative evidence showing that there is a genuine issue of material fact for trial."  *Steelvest*, 807 S.W.2d at 482; *see also Neal v. Welker*, 426 S.W.2d 476, 479 (Ky. 1968) ("When the moving party has presented

evidence showing that . . . there is no genuine issue of any material fact, it becomes incumbent upon the adverse party to counter that evidentiary showing by some form of evidentiary material that there is a genuine issue pertaining to a material fact.").

"The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996)) (citing CR[1] 56.03).  Because there are no factual findings at issue, the appellate court reviews that trial court's decision *de novo*.  *Shelton*, 413 S.W.3d at 905.

### III.   ANALYSIS

Deane alleges two errors on appeal:  first, that the circuit court prematurely granted summary judgment to Elk Horn, depriving Deane of any opportunity to conduct meaningful discovery, and second, that the circuit court erred in granting Elk Horn's motion for summary judgment because issues of fact exist regarding:  whether Deane made payment during the cure period, how much Deane allegedly owed under the Lease, and whether Elk Horn waived Deane's default.  Because we hold that the circuit court correctly determined that the Lease

---

[1] Kentucky Rules of Civil Procedure.

terminated as of September 11, 2018, any issues regarding Elk Horn's alternative termination date – May 15, 2019 – are moot and will not be addressed.

"[F]or summary judgment to be properly granted, the party opposing the motion must have been given adequate opportunity to discover the relevant facts. Only if that opportunity was given do we reach the issue of whether there were any material issues of fact precluding summary judgment." *Suter v. Mazyck*, 226 S.W.3d 837, 842 (Ky. App. 2007), *as modified* (Jul. 13, 2007); *Pendleton Bros. Vending v. Com. Fin. & Admin. Cabinet*, 758 S.W.2d 24, 29 (Ky. 1988) ("A summary judgment is only proper after a party has been given ample opportunity to complete discovery . . . ."). "There is no requirement that discovery be completed, only that the non-moving party have 'had an opportunity to do so.'" *Carberry v. Golden Hawk Transp. Co.*, 402 S.W.3d 556, 564 (Ky. App. 2013) (quoting *Hartford Insurance Group v. Citizens Fidelity Bank & Trust Company*, 579 S.W.2d 628, 630 (Ky. App. 1979)) (holding summary judgment was not premature because, although discovery was still ongoing, the material facts were no longer in dispute); *see also Ray v. Stone*, 952 S.W.2d 220, 223 (Ky. App. 1997) (holding that an appellant had not been denied any meaningful "right to discovery" because the additional discovery sought would not change the outcome of the case). To demonstrate that more discovery is needed, the party opposing summary judgment party must proffer "specific examples of what discovery could have been

undertaken that would have affected the outcome had it been conducted." *Benton v. Boyd & Boyd, PLLC*, 387 S.W.3d 341, 344 (Ky. App. 2012).

> Whether a summary judgment was prematurely granted must be determined within the context of the individual case. In the absence of a pretrial discovery order, there are no time limitations within which a party is required to commence or complete discovery. As a practical matter, complex factual cases necessarily require more discovery than those where the facts are straightforward and readily accessible to all parties.

*Suter*, 226 S.W.3d at 842.

According to Deane, the question before our Court is not whether Deane had been allowed adequate opportunity for discovery, but whether Deane had had *any* time to conduct any discovery at all. To that end, Deane seems to argue that the discovery period should be determined from the time that Elk Horn amended its complaint to the time Elk Horn moved for summary judgment, meaning that Deane had only thirteen days to conduct discovery.

Deane attempts to draw a comparison between the case before us and *Suter*. In that case, "the Suters served interrogatories and a request for production of documents [promptly after they filed their complaint in June 2005]; however, it was not until September 2005 that the records were made 'available' to the Suters." *Id*. at 844. Six weeks after the Suters were permitted access to opposing counsel's office to review the thousands of documents produced, some of which were irrelevant or had not been requested, the defendants moved for summary

- 12 -

judgment. *Id*. When presented with the question of "whether the Suters were given the opportunity to conduct further discovery or if they simply failed to conduct the necessary discovery," our Court held that, "[u]nder the circumstances, . . . the Suters did not have a reasonable [amount of] time to complete discovery" when faced with such a massive document dump. *Id*. Significantly, the *Suter* Court also noted that "the movant does not have to show that the party opposing a motion for summary judgment actually completed discovery but only that the opposing party had the opportunity to do so." *Id*. at 842.

According to Deane, under the *Suter* holding, "[i]f six weeks after producing documents is unreasonable, then thirteen days after the amendment of the Complaint is similarly unreasonable." Appellant's Brief ("Br.") at 9. Deane is correct that thirteen days is an unreasonable amount of time in which to complete discovery. However, Deane fails to acknowledge and account for the four months prior to Elk Horn's amended complaint. Deane was afforded more than four months during which to conduct discovery regarding Elk Horn's first complaint – the claim upon which the circuit court rendered summary judgment. This is especially relevant here because summary judgment was granted on the allegations and claim made in the first complaint. The amended complaint added an alternative claim based on a second alleged termination date. However, the trial

- 13 -

court granted summary judgment on the first termination date, which had been at issue since the inception of the litigation.

Deane additionally contends that its deposition requests from August 29, 2019, should have been honored prior to the trial court even considering a summary judgment motion, as Elk Horn's summary judgment motion depended in part upon the affidavit of Joseph Funk, one of the witnesses whose deposition Deane requested and whose deposition Deane now claims is essential to its defense. However, it was Deane that moved to postpone Funk's deposition on September 11, 2019. Deane did not communicate any plans to reschedule that deposition or any others prior to Elk Horn's motion. Furthermore, there was no discovery pending at the time the circuit court ruled on Elk Horn's motion.

According to Deane, the depositions of Faye Conn, Russell Hill, Terry Gibson, and other Elk Horn corporate representatives would also have supported Deane's positions with regard to the amounts owed under the Lease and whether Deane was aware of the reason the payments were late and approved of the late payments. However, none of this proposed discovery "would have affected the outcome had it been conducted[,]" as it probes into a line of inquiry immaterial to the issues before the circuit court. *Benton*, 387 S.W.3d at 344. Deane further argues that the depositions may reveal prior breach by Elk Horn and maintains that

its late payment was induced by its reliance on Elk Horn's assent.[2] "However, '[t]he hope or bare belief . . . that something will "turn up," cannot be made basis for showing that a genuine issue as to a material fact exists.'" *Benningfield v. Pettit Envtl., Inc.*, 183 S.W.3d 567, 573 (Ky. App. 2005) (quoting *Neal*, 426 S.W.2d at 479-80).

Had the circuit court determined that the Lease had been terminated as of May 2019, Deane would in fact be correct that it had been denied sufficient time to conduct meaningful discovery regarding Elk Horn's additional claim. However, the circuit court made its determination based upon Elk Horn's first claimed termination date of September 11, 2018. Deane fails to make any argument as to why it did not conduct discovery on Elk Horn's original claim during the four months after Elk Horn filed its first petition, and Deane's proposed continued discovery explores lines of inquiry that ultimately have no bearing on the circuit court's determination. Because the circuit court granted summary judgment to Elk Horn on its original claim as represented in its first complaint, Deane's argument that it was denied meaningful discovery is not persuasive.

---

[2] Deane also contends that it ceased payments for its use of Elk Horn's mines because Deane was informed not to make further payment once the lawsuit was filed. This argument is irrelevant to our decision and that of the circuit court due to the Lease's September 11, 2018, termination date.

Deane argues that there are several questions of material fact still unresolved, the first of which is whether a breach of the Lease even occurred due to the "operation of the cure periods." Appellant's Br. at 10. According to Deane, "Elk Horn produced both documents reflecting that the notice of termination was mailed out on August 28, 2019 [sic], and also other documents demonstrating that it was mailed out on September 12, 2019 [sic]."[3] *Id*. Although Deane contends that there is a veritable question of when the Notice of Termination was mailed, this issue is ultimately due to Deane's own confusion regarding the Notice of *Default* Elk Horn issued on August 28, 2018, and the Notice of *Termination* sent on September 11, 2018. Appellant's Br. at 10.

Under the terms of the parties' agreement, the Notice of Default and Notice of Termination are two distinct documents operating to initiate the cure period and terminate the lease as provided by the Lease. There is no real doubt as to when the Notice of Default was first sent and received, nor is there any issue as to when the cure period ended. Furthermore, it is undisputed that Deane made its payment on September 13, 2018, two days after the cure period and after the Lease was terminated. Although Deane repeatedly argues that it "was never in default in September of 2018," Deane expressly admits in its appellate brief that "payment

---

[3] Deane consistently mistakes the years – the dates of these notices are and always have been 2018, not 2019.

was made on September 13, 2019 [sic]," days after the cure period ended. Appellant's Br. at 10. In other words, Deane concedes to the very facts amounting to default in the same breath that it denies ever having been in default.

Next, Deane claims that there is an issue of material fact as to the amount Deane owed under the Lease in September 2018. While the amount of relief would certainly constitute a material fact in a claim for damages, Elk Horn is not seeking such relief. Rather, Elk Horn sought a declaration of rights. "[A] declaratory judgment action is not a claim for damages, but rather it is a request that the plaintiff's rights under the law be declared." *Cabinet for Health & Family Servs. v. Puckett*, No. 2012-CA-002165-MR, 2014 WL 689094, at *3 (Ky. App. Feb. 21, 2014). Consequently, it does not matter how much Deane owed to Elk Horn in September 2018 or how much Deane tendered to Elk Horn after the expiration of the cure period. What does matter is that no payment was made until after termination. Although the parties dispute how much money was owed under the Lease in September 2018, this issue is ultimately immaterial and irrelevant to the dispositive issue in this case. *See V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (a genuine issue of material fact exists when there are factual disputes that might affect the outcome of the case). "An issue of nonmaterial fact will not preclude the granting of a summary judgment." *Isaacs v.*

*Smith*, 5 S.W.3d 500, 503 (Ky. 1999), *as modified on denial of reh'g* (Dec. 16, 1999).

Finally, Deane contends that Elk Horn waived the September 2018 default, which Deane alleges would have been demonstrated through discovery. Ordinarily, acceptance of late payment for any defaulted period in a lease constitutes waiver of default. *Ohio Valley Oil & Gas Co. v. Irvin Development Co.*, 212 S.W. 110, 112 (Ky. 1919); *see also Bridges v. Jeffrey*, 437 S.W.2d 732, 733 (Ky. 1968). However, Section 3.19(R) of the Lease expressly provides that "No waiver, release, modification or amendment of any of the terms, conditions or provisions of this Lease is valid *unless it is in writing* and duly executed by Elk Horn and Lessee."

"'[I]n the absence of ambiguity[,] a written instrument will be enforced strictly according to its terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (quoting *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966)); *Smith v. Crimson Ridge Development, LLC*, 410 S.W.3d 619, 621 (Ky. App. 2013) ("A contract is interpreted by looking solely to the four corners of the agreement."); *Codell Const. Co. v. Commonwealth*, 566 S.W.2d 161, 164 (Ky. App. 1977) ("The final contract that resulted from the acceptance of the bid is not ambiguous, and is

therefore, not susceptible to any reformation or other rewriting by this Court.").

The parties do not dispute that the language of the Lease is clear and unambiguous, and therefore the Lease must be strictly enforced. *See Smithfield Farms, LLC v. Riverside Developers, LLC*, 566 S.W.3d 566, 571 (Ky. App. 2018), *disc. rev. denied* (Ky. Feb. 7, 2019). Furthermore, our Court has specifically upheld the validity of non-waiver provisions in a variety of contracts. *Universal C.I.T. Credit Corp. v. Middlesboro Motor Sales, Inc.*, 424 S.W.2d 409, 411 (Ky. 1968) (upholding a nonwaiver provision in contract governing a secured transaction); *Home Finance Company v. Frazier*, 380 S.W.2d 91, 93 (Ky. 1964) (upholding a nonwaiver provision in contract governing a conditional sale that was also a secured transaction). Consequently, under the terms of the Lease, only a written waiver would be effective to reinstate the Lease.

Deane acknowledges that the Lease terms included a nonwaiver provision providing that accepting payment does not constitute a waiver of any rights under the lease. However, Deane appears to suggest that although the Lease was terminated, an Elk Horn representative modified the Lease to waive and nullify the termination. As evidence meant to support this proposition, Deane references email correspondence between Deane and Elk Horn employee Faye Conn. According to Deane, Deane "emailed [Elk Horn] after receiving the termination notice to verify that it could be disregarded, aside from the unmined

- 19 -

mineral tax discrepancy (which the lease allows 30 days to correct) and [Elk Horn] responded by email affirming that only the late fee and unmined mineral tax remained at issue." R. at 425. While Deane did in fact email this very inquiry, Deane's depiction of Elk Horn's response is disingenuous. In fact, the entirety of Conn's email provided:

> Hi Kirk,
>
> The amount we show due EHCC is as follows:
>
> Late Fees    $5,165.78
> 2018 UMT Prorated 9 months @ 4406.44 totaling $3,657.96
> Total due    $8,823.74
>
> Thanks, Faye

R. at 443.

Conn's email ignored Deane's request for "verification." R. at 443. This noncommittal acknowledgement of payment cannot be construed as the written confirmation envisioned by the lease that Deane's default and the resulting termination could be disregarded. Deane has not offered affirmative evidence of valid, written waiver under the terms of the Lease, or convincingly suggested that additional discovery will unearth a written waiver.

To the extent that Deane appears to suggest that an Elk Horn representative orally modified the Lease to waive and nullify the termination, we reiterate that the Lease requires written waiver executed by both parties to the

Lease according to Section 3.19(R). Deane argues that additional discovery would "uncover substantial support for its claim that Elk Horn agreed that the termination letter could be disregarded." Appellant's Br. at 12. However, Deane has not suggested that it is in possession of a written, signed waiver, as required by the Lease, nor does Deane suggest that it is aware of the existence of such a waiver.

The facts are undisputed that Deane defaulted on the Lease, failed to cure within the cure period, and attempted to salvage the Lease through late and insufficient payment. Elk Horn terminated the Lease, as was its right, on September 11, 2018.

## IV. CONCLUSION

In light of the foregoing, we AFFIRM the Fayette Circuit Court's judgment.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Billie R. Shelton
Jordan W. Morgan
Lexington, Kentucky

BRIEF FOR APPELLEE:

Robert J. Patton
Prestonsburg, Kentucky

Mickey T. Webster
Thomas E. Travis
Lexington, Kentucky