RENDERED: DECEMBER 3, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0072-MR

GABRIELL GRAY                                   APPELLANT

v.                 APPEAL FROM HARDIN CIRCUIT COURT
               HONORABLE KELLY MARK EASTON, JUDGE
               ACTION NO. 18-CI-00175

MARK WELLS; EDDIE WILKERSON;
WES BLAIR; JENNY BROWN; AND
MELISSA CURTSINGER                               APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND JONES, JUDGES.

CETRULO, JUDGE: Gabriell Gray (Gabbie) appeals a judgment of the Hardin Circuit Court summarily dismissing her negligence claims against the above-captioned appellees based primarily upon qualified immunity. Upon review, we affirm.

# FACTUAL AND PROCEDURAL HISTORY

In its dispositive order of December 15, 2020, the circuit court accurately summarized the relevant history of this matter:

> Just over four years ago, Gabbie was a student at John Hardin High School ("JHHS"). Prior to the incident which forms the basis of this suit, Gabbie had "issues" with the Defendant Shayla Chedwick ("Shayla"). While words had been exchanged, perhaps for years, there was no prior incident of actual physical violence between them reported to school officials.
>
> On Monday morning, November 21, 2016, Gabbie and Shayla were both in the cafeteria or commons area of JHHS with a number and perhaps hundreds of other students. The approximate time was after 8 a.m. but before classes started for the day at 8:30 a.m. Students regularly had the opportunity for breakfast during this time.
>
> Gabbie suggests the details of what happened on this morning are undisputed, but this record suggests otherwise. According to Gabbie's statements, Shayla began the incident by asking Gabbie: "Do you have a problem?" This started from a distance. Then Shayla came closer to Gabbie repeating the question. Gabbie responded telling Shayla: "I just don't like you." As things escalated, Gabbie tells Shayla to get out of her face.
>
> Gabbie says Shayla then pulled her hair. Shayla says Gabbie pushed her before Shayla used any force. Shayla has counterclaimed for assault and battery by Gabbie suggesting this possible initial aggressor argument. In any event, a fight starts between the girls. Another student and friend of Gabbie's got between the girls disrupting the initial fight.

At this point, Shayla's brother, the Defendant Jaevoni Chedwick ("Voni"), interjected himself striking Gabbie. The situation ended when a staff member, ROTC Colonel Warren Griggs ("Griggs"), was passing by the area and intervened to break up the fight. Griggs himself was injured by Voni during the melee.

This matter was initiated in Hardin Circuit Court on February 2, 2018, against Gabbie's attackers, and also the above-captioned appellees who were employed at JHHS in various roles at the time. Wells was the principal; Wilkerson was the vice-principal; Blair was the director of the county school's alternate school programs; and Brown and Curtsinger were teachers. In her complaint, Gabbie[1] asserted that these individuals had breached tort-related duties owed to her by failing to prevent the above-described incident, and that they were accordingly negligent. As discussed in greater depth below, she believed these individuals should have either (1) stopped the fight from happening that day, or (2) ensured that she and Shayla were not in the same school.

In response, each of the appellees asserted qualified immunity; alternatively, they asserted no duty owed to Gabbie had been breached because the incident had been unforeseeable. After a period of discovery and motion practice, they also moved for summary judgment on those bases. Upon consideration, the

---

[1] This suit was initially filed on Gabbie's behalf by Jessica Monique Gray, Gabbie's mother and next friend. Gabbie was later substituted as the plaintiff.

circuit court granted their motions. This appeal followed. To the extent necessary, additional details will be discussed below over the course of our analysis.

## STANDARD OF REVIEW

Summary judgment serves to terminate litigation where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure (CR) 56.03. It is well established that a party responding to a properly supported summary judgment motion cannot merely rest on the allegations in his pleadings. *Continental Cas. Co. v. Belknap Hardware & Mfg. Co.*, 281 S.W.2d 914, 916 (Ky. 1955). "[S]peculation and supposition are insufficient to justify a submission of a case to the jury, and . . . the question should be taken from the jury when the evidence is so unsatisfactory as to require a resort to surmise and speculation." *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006) (quoting *Chesapeake & Ohio Ry. Co. v. Yates*, 239 S.W.2d 953, 955 (Ky. 1951)). "'Belief' is not evidence and does not create an issue of material fact." *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990); *see also Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. App. 2007) ("A party's subjective beliefs about the nature of the evidence is not the sort of affirmative proof required to avoid summary judgment."). Furthermore, the party opposing summary judgment "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 481 (Ky. 1991) (citations and internal quotation marks omitted).

On appeal, we must consider the evidence of record in the light most favorable to the non-movant and must further consider whether the circuit court correctly determined that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001) (footnote omitted).

*McAlpin v. American General Life Ins. Co.*, 601 S.W.3d 188, 193-94 (Ky. App. 2020).

## ANALYSIS

As discussed, Gabbie sued the appellees for negligence, a theory that generally requires a plaintiff to show "that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003). Consistent with her negligence theory, KRS[2] 161.180(1)[3] illustrates that school personnel owe actionable duties to students:

Each teacher and administrator in the public schools shall in accordance with the rules, regulations, and bylaws of

---

[2] Kentucky Revised Statute.

[3] Apart from KRS 161.180, Gabbie references eight other statutes (with dubious applicability), along with several numbered school board polices, in support of her overarching argument that school employees owe a duty to students to provide a safe learning environment. Because Gabbie adds little explanation regarding the applicability of what she has referenced, we will only state that, taken collectively, it does not conflict with our analysis.

the board of education made and adopted pursuant to KRS 160.290 for the conduct of pupils, hold pupils to a strict account for their conduct on school premises, on the way to and from school, and on school sponsored trips and activities.

With that said, a dispositive issue presented in this appeal is what *kind* of duty each of these appellees owed her relative to her negligence claims. To explain, qualified immunity provides a safe harbor for "public officers and employees" such as the appellees herein when "sued in their individual capacities . . . for good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). In other words:

> Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, . . . ; (2) in good faith; and (3) within the scope of the employee's authority. . . . An act is not necessarily "discretionary" just because the officer performing it has some discretion with respect to the means or method to be employed. . . .
>
> Conversely, an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts. . . . "That a necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in nature."

*Id*. (citations omitted).

Accordingly, a court that considers a qualified immunity defense must determine whether the defendant's alleged acts were ministerial acts, subject to negligence analysis, or discretionary tasks, subject only to bad faith examination. *Id*. at 523. "The distinction between discretionary acts and mandatory acts is essentially the difference between making higher-level decisions and giving orders to effectuate those decisions, and simply following orders." *Marson v. Thomason*, 438 S.W.3d 292, 297 (Ky. 2014). In the context of student supervision, Kentucky draws a line between school administrators and teachers. "Because [the] task is so situation specific, and because it requires judgment rather than a fixed, routine performance, looking out for children's safety is a discretionary function for a principal[.]" *Id*. at 299; *but see id*. (recognizing that "specific instructions could make such duties required and thus ministerial."). On the other hand, "a teacher's duty to supervise students is ministerial, as it requires enforcement of known rules." *Id*. at 301. Although in the course of a ministerial or discretionary task "unexpected events [may] occur[,]" it is the nature of the official's acts or omissions, rather than third party conduct, that "determines whether they are discretionary or ministerial." *Id*. at 302.

Relevant to our qualified immunity analysis, Gabbie does not contend that any of the alleged actions or inactions at issue in this matter fell outside the scope of any appellee's authority. Therefore, considering what is set forth above,

-7-

we will first review whether the circuit court correctly determined each individual appellee's at-issue conduct was discretionary, as opposed to ministerial. We will then review whether affirmative evidence supports that any appellee performed discretionary duties in bad faith or, as a triable issue, carried out ministerial responsibilities negligently. Lastly, we will address Gabbie's additional argument that she was entitled to more time for discovery, and that the circuit court's judgment was therefore premature.

**1. The Teacher Appellees**

As indicated, Brown and Curtsinger were teachers at JHHS. Regarding why Gabbie believes they are liable to her for negligence, she states on page 4 of her brief that in her view both Brown and Curtsinger "[s]hould have intervened or called the S.R.O. [student resource officer] when [Shayla] attacked [her]." Accordingly, Gabbie asserts, Brown and Curtsinger breached duties owed to her pursuant to KRS 161.180 and Hardin County School District policies.

Apart from making these general assertions, however, Gabbie does not specify *where* these teachers were required to supervise during the incident; nor does she detail the extent of her interaction – if any – with these teachers in relation to the incident. And, her failure to do so is detrimental to her case.

As discussed, "a teacher's duty to supervise students is ministerial, as it requires enforcement of known rules." *Marson*, 438 S.W.3d at 301. However,

-8-

Kentucky recognizes an exception to this general rule, as illustrated in *Ritchie v. Turner*:

> Like the general duty in *Marson* to provide a safe school environment, the duty in KRS 161.180(1) . . . to provide student supervision "is a discretionary function for [school officials] exercised most often by establishing and implementing [supervision] policies and procedures," which is qualitatively different from actually supervising the students, a ministerial duty for those who are assigned such supervision. *Marson*, 438 S.W.3d at 299, 302. *Doe has not alleged that any of the school officials were assigned as supervisors of the meeting area she left to go to Mitchell's classroom or that the school officials passed her in the halls on those occasions.* Simply put, they were not actually involved in active supervision of the students at the times relevant to Doe's complaint. Consequently, the school officials only had a general supervisory duty over Doe. We agree with the Court of Appeals that *Marson* resolves the question in favor of the school officials as to whether they are entitled to qualified immunity as to Doe's supervision, or the lack thereof, when she left the morning meeting area and met Mitchell in his classroom.

559 S.W.3d 822, 832 (Ky. 2018) (emphasis added).

To be clear, the "school official" defendants referenced in the quote set forth above – who were granted qualified immunity on the strength of its reasoning – included, as here, a *teacher* who was sued by a student for an alleged negligent failure to supervise. *See id*. at 829 n.12. And, with respect to that teacher and the other school official defendants, the Kentucky Supreme Court indicated that only a general "discretionary . . . supervisory duty" applied to them,

*id.* at 832, absent any evidence demonstrating either that those individuals were *assigned* to supervise the area in which the incident occurred or should have *recognized* that a known rule had been violated in their presence and required enforcement.

Here, in support of their motions for summary judgment, Brown and Curtsinger provided a copy of the JHHS duty roster from the 2017-2018 staff handbook. It indicates that when this incident occurred, Curtsinger was assigned to supervise "AM FRONT"; Brown was assigned to supervise "FRONT ENTRANCE"; and that neither was assigned to supervise the "COMMONS AREA" where the incident occurred. Below, Gabbie never rebutted this evidence. Consistently with *Ritchie*, this was a point the circuit court found dispositive. In its order of summary judgment, the circuit court explained:

> The first problem for this part of the claim is that none of the school employees were assigned to the area where the fight occurred that morning, and they cannot be omnipresent. Had one of these employees been so assigned, there could have been ministerial duties to perform. This is illustrated by *Marson v. Thomason*, 438 S.W.3d 292 (Ky. 2014).
>
> . . . .
>
> Regardless, most of these Defendants were not even at the scene and had no duty to be there that morning. If they had been there, they still would have engaged in discretionary actions, not ministerial ones.

In her brief, Gabbie cites nothing that contradicts Brown's and Curtsinger's evidence; she does not detail the extent of her interaction – if any – with these teachers in relation to the incident; nor, for that matter, does she even address this aspect of the circuit court's order. And, it is not the obligation of this Court to do so for her. As an appellate court, we will not search the record to flesh out an argument for a party. We confine our review "to errors pointed out in the briefs." *Milby v. Mears*, 580 S.W.2d 724, 727 (Ky. App. 1979). Consequently, Gabbie has not demonstrated the circuit court erred in determining Brown's and Curtsinger's duties were at most discretionary for purposes of a qualified immunity analysis.

As to the remaining element of qualified immunity, the onus was upon Gabbie to prove bad faith. *See Yanero*, 65 S.W.3d at 523. Specifically, Curtinger's and Brown's qualified immunity could only have been defeated if evidence demonstrated they *knew* or *reasonably should have known* that their actions, performed within the sphere of their official responsibility, would violate Gabbie's constitutional rights or were motivated by a malicious intent to cause a deprivation of such rights or other injury. *See James v. Wilson*, 95 S.W.3d 875, 909 (Ky. App. 2002) (citation omitted).

-11-

Here, Gabbie has failed to carry her burden. After accurately summarizing the substance of Gabbie's deposition testimony, the circuit court explained in its order:

> Gabbie offers nothing to show any evidence of bad faith. Although some of the school employees knew of the friction between Gabbie and Shayla, no one knew of prior physical violence. Gabbie had problems with at least two other girls before the events in question. None of those turned violent.

In short, Gabbie has failed to demonstrate the circuit court erred in dismissing her claims against Curtsinger and Brown on qualified immunity grounds. Thus, it is unnecessary to address Gabbie's claims of negligence against these appellees any further.

## 2. The School Administrator Appellees

Next, we address Gabbie's qualified immunity claims relative to Wells, Wilkerson, and Blair, each of whom were school administrators at all relevant times. Regarding why Gabbie believes they are liable to her for negligence, she explains on page 4 of her brief:

> a. Mark Wells; He failed to take any action to have [Gabbie] transferred from John Hardin despite several requests by her parents to do so. He did not sufficiently supervise or discipline [Shayla] or [Voni] so that their assault of [Gabbie] would not have happened.
>
> b. Eddie Wilkerson; He failed to take any action to have [Gabbie] transferred from John Hardin despite several

-12-

requests by her parents to do so. He did not sufficiently supervise or discipline [Shayla] and [Voni] so that their assault of [Gabbie] would not have happened.

    c. Wes Blair; He failed to take any action to have [Gabbie] transferred from John Hardin despite several requests by her parents to do so.

As with Curtsinger and Brown, Gabbie asserts these appellees also breached duties owed to her pursuant to KRS 161.180 and Hardin County School District policies. Unlike her claims against those two teachers, she does not argue that Wells, Wilkerson, and Blair should have been actively supervising the commons area, or that they should have intervened during the incident. Rather, she faults these individuals for failing to prevent the incident from happening – by either transferring Gabbie or properly disciplining Shayla and Voni. In support of her claims, Gabbie explains that approximately one month before the incident, her parents asked Wells, Wilkerson, and Blair to transfer her to a different school; and, that the requested transfer was not granted until the day after the incident.

However, we agree with the circuit court's assessment that the record shows these appellees had no duty more specific than their general responsibility to "provide a safe school environment," which, as to Kentucky school administrators, "is a discretionary function." *Marson*, 438 S.W.3d at 299. To begin, Gabbie cites nothing of record indicating any of the appellees herein, prior to this incident, were aware or should have been aware of anything capable of triggering an "absolute,

-13-

certain, and imperative [duty]" to keep her separated from Shayla and Voni.

*Yanero*, 65 S.W.3d at 522. Indeed, as Gabbie and Shayla each testified in their respective depositions, their interactions never became physical until this incident occurred. Likewise, as the circuit court correctly observed in its order,

> Gabbie's parents did ask for a transfer of their children[4] to Central Hardin High School about a month before this fight at JHHS. Although it was later suggested this transfer request was due to safety concerns, the reason actually stated in writing was "the children can not [sic] focus on school work due to other children harassing them."[5]

> Gabbie apparently assumes this transfer decision rested with the Defendants she has sued. The uncontradicted evidence is this record indicates this would require a decision (and a discretionary one at that) by Central Hardin staff or others. The transferee school has a say in the decision. Gabbie and her parents knew this. This was not the first transfer request for Gabbie. She had most recently been transferred to JHHS.

As to whether any of these school administrator appellees acted in bad faith, Gabbie argues "[i]t is a self-proven fact that there WAS a threat to her safety because of what did happen to [her]," and:

> Insofar as bad faith, how much more bad faith is required when it is a proven fact that the school officials ignored the parents' requests and actual written transfer request

---

[4] The October 25, 2016 transfer request was for both Gabbie and her sister, who was one grade below her.

[5] Likewise, Gabbie's mother, Jessica Gray, testified Shayla was not among the "other children harassing" Gabbie and her sister described in the transfer request, and that her concern was with a different student.

-14-

for over three weeks when prompt action on their part to accomplish the transfer would have prevented this assault on Gabriell.

Taken objectively, Gabbie's argument is illogical. She is arguing the school administrator appellees knew or should have known, *prior* to when this incident occurred, that there was an imminent risk to her safety at JHHS *because* this incident occurred. It is unnecessary to delve any further into this point beyond noting that *hindsight* is not the proper metric for assessing bad faith. *See Wilson*, 95 S.W.3d at 910 (explaining, with respect to a school official's discretion for purposes of qualified immunity, that "their judgment may arguably be questionable, particularly with the benefit of hindsight, but applying such an unrealistic standard is not only unjust, it's unauthorized."). Apart from this argument, Gabbie cites no evidence supportive of bad faith. Therefore, we discern no error with this aspect of the circuit court's judgment, and it is unnecessary to address Gabbie's claims of negligence against these appellees any further.

## 3. Adequate Time for Discovery

Gabbie's final argument concerns her allotted time for discovery. The extent of her contention is as follows:

> After some discovery had taken place, the Motion for Summary Judgment was filed by the Appellees/Defendants who were the employees/agents of the school and school board on September 22, 2020. Summary judgment was premature for these Appellees/Defendants because the Appellant/Plaintiff

had not had an opportunity to take the depositions of these Appellees/Defendants, Mark Wells, Eddie Wilkerson, West [sic] Blair, Jenny Brown, and Melissa Curtsinger, (hereinafter referenced as HCBOE employees) and thus to complete discovery.

We disagree. To be sure, "for summary judgment to be properly granted, the party opposing the motion must have been given adequate opportunity to discover the relevant facts. Only if that opportunity was given do we reach the issue of whether there were any material issues of fact precluding summary judgment." *Suter v. Mazyck*, 226 S.W.3d 837, 842 (Ky. App. 2007). However, "opportunity" is the operative word in this context: "There is no requirement that discovery be completed, only that the non-moving party have 'had an opportunity to do so.'" *Carberry v. Golden Hawk Transp. Co.*, 402 S.W.3d 556, 564 (Ky. App. 2013) (citation omitted). To that end,

> [w]hether a summary judgment was prematurely granted must be determined within the context of the individual case. In the absence of a pretrial discovery order, there are no time limitations within which a party is required to commence or complete discovery. As a practical matter, complex factual cases necessarily require more discovery than those where the facts are straightforward and readily accessible to all parties.

*Suter*, 226 S.W.3d at 842. Moreover, to demonstrate that more discovery is needed, the party opposing summary judgment must proffer "specific examples of what discovery could have been undertaken that would have affected the outcome

-16-

had it been conducted." *Benton v. Boyd & Boyd, PLLC*, 387 S.W.3d 341, 344 (Ky. App. 2012).

Here, in rejecting Gabbie's contention below, the circuit court explained:

> A prior Motion for Summary Judgment first raised the question of immunity in 2018. The prior Motion was limited to the status of the Defendant school employees in their official capacities. As previously ruled, a suit against individuals in an official capacity is essentially the same as a suit against their state agency employer. As a result, these same Defendants were immune from suit in their <u>official</u> capacities.

> The Court entered that Order on July 16, 2018, now over two years and four months ago. The Order includes a reference to the bigger issue of qualified official immunity for these Defendants sued in their <u>individual</u> capacities. Immunity is not just immunity from an eventual adverse judgment but to the ordeal of being a party to a suit at all. Questions of immunity should be addressed promptly at the outset of a suit and are subject to interlocutory appeal.

> The fact Gabbie has not taken depositions or otherwise created a record of her contentions about immunity does not mean she has not had the opportunity to do so. In [*Hartford Ins. Group v. Citizen's Fidelity Bank & Trust Co.*, 579 S.W.2d 628 (Ky. App. 1979)], the court found six months sufficient in the circumstances. Gabbie has had the required opportunity for discovery.

> In any event, Gabbie's own testimony and other evidentiary materials are sufficient to evaluate the qualified official immunity questions.

As the circuit court indicated, qualified immunity is an issue that should be resolved *promptly*; and for general summary judgment purposes, *six months* has been deemed an adequate period. Here, Gabbie was given over *two years*. Moreover, Gabbie does not provide "specific examples of what discovery could have been undertaken that would have affected the outcome had it been conducted." *Benton*, 387 S.W.3d at 344. At most, her argument merely expresses her hope or belief that, if given more time, "something will 'turn up'" – which is wholly inadequate for summary judgment purposes. *See Benningfield v. Pettit Env't., Inc.*, 183 S.W.3d 567, 573 (Ky. App. 2005) (quoting *Neal v. Welker*, 426 S.W.2d 476, 479-80 (Ky. 1968)). Accordingly, we find no error in this respect, either.

## CONCLUSION

Consistent with our analysis set forth above, we AFFIRM.


ALL CONCUR.


BRIEF FOR APPELLANT:

Dwight Preston
Elizabethtown, Kentucky

BRIEF FOR APPELLEES:

Samuel E.T. Jones
Charles H. Cassis
Prospect, Kentucky